## Dwight, Syndic, *v.* Simon et al.

Where a *cessio bonorum* has been accepted by the court and the creditors, and a syndic been appointed and qualified, all the property and rights of property of the insolvent are vested in his creditors, represented by the syndic as their trustee. Stats. 20 Feb. 1817; 29 March, 1826.

All the rights of an insolvent vest in his syndic, whether placed on his schedule or not.

The rights vested in the creditors by a *cessio bonorum* are unaffected by subsequent proceedings of the insolvent, in causing himself to be declared a bankrupt, under the act of Congress of 19 August, 1841. *Per Cur:* Nothing passes to the assignee of the bankrupt, but the residuary interest of the insolvent after the full administration of the insolvent estate, and the entire fulfilment of the trust thereby created in favor of the creditors

The appointment of an administrator, regularly made, will not be rendered void by the subsequent discovery of a testament; nor does the authority of the administrator cease from the moment of the probate and order of execution of the will. His capacity to prosecute an existing suit will not cease, even after the executor named in the will has been duly qualified, where the latter, after praying for an inventory, takes no further steps in the administration, and does nothing whatever to indicate that he takes any interest in the prosecution of an action in which the interests of the succession are seriously involved.

The capacity to exercise the office of administrator, does not cease, *ipso facto*, by the bankruptcy of the individual. It may be a ground for his removal; but, of itself, does not impair his official authority.

The exception of *res judicata* must be specially pleaded.

Where a partner charged with the settlement of the partnership employs an agent to act for the benefit and in the business of the partnership, and the latter, even by the express direction of that partner, applies the money of the partnership in his hands to the payment of the individual debts of that partner, or otherwise to his use, he violates his duty as the agent of the partnership, and will be liable to its creditors. Had he delivered the money to the liquidating partner, he would not he answerable for its subsequent appropriation by the latter to his own use.

An attorney at law should not be held to a less onerous responsibility than an attorney in fact; and he will be bound to pay interest on any sum remaining in his hands, from the day he becomes a defaulter by delaying to pay it over. C. C. 2984.

Attorneys and counsellors at law practising in partnership are equally responsible to their clients for money collected and not paid over, though one of them may have had no participation in that particular transaction.

APPEAL from the District Court of St. Mary, *Overton*, J. *Dwight*, appellant, *pro se. Maskell*, one of the defendants, *pro se. Magill* appeared on the same side. The opinion of the court, read at this term, was prepared at the last term by

SLIDELL, J. *P. H. Robert* and *B. C. Robert* were associated in a commercial partnership in the parish of St. Mary, under the firm of *P. H. & B. C. Robert.* The interest of the former was two thirds, and that of the latter one third. In 1838 the firm was dissolved by mutual consent, and *B. C. Robert* was charged with the liquidation of its affairs. In June, 1838, the liquidator placed in the hands of *Simon & Maskell*, associated as attorneys and counsellors in the practice of law, a large amount of notes, evidences of debt, and accounts, due to the firm, which they receipted for, as received for collection for account

of Messrs. *P. H. & B. C. Robert.* In 1839, *P. H. Robert* died; his succession was opened in the Probate Court for the parish of St. Mary, and *B. C. Robert* was appointed administrator of his succession. In 1840, *B. C. Robert* instituted proceedings as an insolvent debtor, in the District Court for that parish. The cession was accepted, and *W. C. Dwight* was duly appointed syndic, and recognized as such by a judgment of the court.

In 1841, the present suit was instituted by *Dwight,* as syndic, to recover from *Simon & Maskell* all monies collected by them upon the claims placed in their hands for collection, and the delivery of such as were uncollected. The plaintiff also prayed for general relief.

After certain exceptions were taken by the defendants, which will be presently noticed, *B. C. Robert* intervened in his capacity of administrator of *P. H. Robert,* alleged that the entire interest in the notes and claims was in the syndic and the administrator, that no one else had any right or interest in them, and that *Simon & Maskell* had been repeatedly requested to account and make delivery to them, but had refused. The intervenor joined in the prayer of the syndic.

To the petition of the syndic the defendants, in April, 1842, filed the following exceptions, praying the dismissal of the cause: "1. That the plaintiff, from his own showing, is syndic of *Baynard C. Robert* alone, and has no right to demand the claims due to the firm of *P. H. & B. C. Robert,* which must be applied first to pay the debts of the firm. 2. That *Joshua Baker* is the testamentary executor of *P. H. Robert's* estate, which is interested to the amount of two thirds of the property of *P. H. & B. C. Robert;* and said *Baker* alone has the right to claim the portion of property which belongs to the estate of said *P. H. Robert.* 3. That no surrender was made of the property, rights and credits of *P. H. & B. C. Robert,* nor could the same be legally done. 4. That *Joshua Baker,* as aforesaid, being entitled to two thirds of the claims belonging to the partnership of *P. H. & B. C. Robert,* and as such representative not having made a surrender, he has a legal right to demand the credits and rights of action belonging to said firm, in preference to the syndic of *B. C. Robert* or any one else."

After the intervention of *Robert,* as administrator, the following additional exceptions were filed by the defendants. "1. *William C. Dwight* claims as the syndic of *B. C. Robert,* who has made a surrender of his property, rights, and credits, individually and as a member of the firm of *P. H. & B. C. Robert,* under the bankrupt law of the United States; and therefore, the assignee of said *Robert,* alone, has a right to carry on this suit. 2. *B. C. Robert,* who has made himself a party to this suit as administrator of the estate of *P. H. Robert,* cannot stand in judgment in said capacity, because: *first,* having been bankrupt he cannot act as administrator of an estate; *second,* because *P. H. Robert* having made a last will and testament, no administrator can be legally appointed to his estate, but only an executor under the will."

In October, 1843, all these exceptions were tried together, and were overruled. Judgments by default were rendered, and subsequently the defendants answered to the merits.

We will at present enquire whether the exceptions were properly overruled, in October, 1843. It is clear that *W. C. Dwight,* being the syndic of one of the partners only, would not have been competent to maintain this action alone, and without the assistance of his partner's administrator. But this objection has been cured by the intervention of the administrator, who has united with him in the action, and is to be considered as a co-plaintiff in the cause.

DWIGHT
v.
SIMON.

But the first and third grounds of exception go further, and contest entirely the interest and authority of the syndic with regard to the partnership assets and their collection—in short, his capacity to stand in judgment in this cause. In the consideration of this branch of the exception, we shall assume, for the present, that the co-plaintiff, the administrator of the estate of *P. H. Robert*, the only other partner, is the proper representative of his succeesion and partnership interest.

We have seen that the partnership was dissolved, and *B. C. Robert* charged with its liquidation, before he became insolvent and made a cession. By the effect of the cession, its acceptance by the court and the creditors at their meeting, and the recognition and entering into office of the syndic, all the property and rights of property of the insolvent became vested in his creditors, represented by the syndic as their trustee. Under our legislation, and the reported decisons of the Supreme Court, this proposition cannot be considered as admitting a doubt. See the acts of 1817 and 1826, and the cases of *West* v. *Creditors,* 8 Rob. 128. *Lawrence, syndic,* v. *Guion,* 9 Rob. 223.

What was the property of the insolvent at the time of the cession? It comprised not only his individual property, but also his interest in the firm of *P. H. & B. C. Robert,* then dissolved and in process of liquidation. It is quite true that the syndic of the insolvent partner did not become the owner of the partnership assets. They belonged to the partnership, and were subject to the payment of the partnership debts, and the liquidation of the rights of the partners *inter se.* But the residuary interest of the insolvent partner passed to, and became vested in, the syndic ; and, as the representative of the insolvent partner, he was entitled to participate in the administration of the partnership assets, and the liquidation of the firm. The only interest in the partnership which remained in the insolvent after his cession, and its acceptance, was such contingent residuary interest as might remain after the full administration of the syndic, and the full and entire payment of all his debts—a contingency which has never happened.

But it was contended in the court below that, the interest of the insolvent in the partnership did not pass, and that no authority over the partnership assets and the liquidation of the partnership was vested in the syndic: because the partnership assets and the interest of the insolvent in the partnership, were not stated in the schedule.

It has been repeatedly held, that all the rights of property of an insolvent vest in his syndic, whether they be stated in the schedule or not. In *Muse, syndic,* v. *Yarborough,* 11 La. 521, the court said : " All the property of the debtor is presumed to be entered on the schedule, because he is to swear that it is ; and if any has been omitted, it is clear it does not belong to the debtor, but passes to the creditors by the cession."

But it is not correct, in point of fact, that the insolvent did not embrace in his schedule his interest in the partnership. His partnership affairs are expressly referred to in his petition ; in it, and in his schedule, he embraces, and actually presents and tenders to the court, all the commercial books of the firm. The receipt itself, for the great mass of the partnership assets, signed by the defendants, and which forms the basis of this action, appears to have been surrendered at the time. It bears the paraph *ne varietur* of the district judge, who signed the order accepting the *cessio bonorum,* and went into the possession of the syndic.

In the court below, at the trial of the cause on the merits, it was urged, and successfully, that the interest of *B. C. Robert* in the partnership vested in his assignee in bankruptcy. It appears that, in February, 1843, *B. C. Robert* pre-

sented to the United States court his petition to be declared a bankrupt, and was so decreed, in March, 1843. His partnership, as well as his individual affairs and liabilities, were stated in his schedule. *Maskell,* the defendant, was appointed his assignee.

But all this was posterior to the insolvent proceedings in the state court, which are still pending, and where the syndicate exists in full force. The rights vested by the insolvent proceedings in the creditors of *Robert* and his syndic as trustee, were wholly unaffected by the action of the bankrupt, and of the federal tribunal under the bankrupt law. Nothing passed to the assignee but the residuary interest of the insolvent, after the full administration of the insolvent estate, and the entire fulfilment of the trust thereby created in favor of the creditors. This point is so clear, and has been so fully adjudged, that it would be a waste of time to enlarge upon it. See the Bankrupt Law. *West* v. *His Creditors,* 8 Rob. 129. See also *Schrœder's Syndic* v. *Nicholson,* 2 La. 351. Being, therefore, satisfied that *Dwight,* the syndic of one of the partners, has a right to stand in judgment in this cause, and to maintain this action, provided his co-plaintiff has a legal capacity to represent the interests of the other partner, and assist in the liquidation of the partnership affairs, we proceed to the consideration of the administrator's capacity, which will necessarily involve the alleged authority of *Baker,* as testamentary executor. And for the purpose of simplifying the enquiry, we will, at present, test the question with reference to the state of things existing down to the 6th October, 1843, when, as already stated, the exceptions under consideration were heard and overruled by the predecessor of the district judge, who subsequently heard this cause on the merits.

The co-plaintiff, *B. C. Robert,* administrator of the succession of *P. H. Robert,* was duly appointed to that office in 1839, took the oath, and gave a bond which was duly filed by the parish judge, as his signature attests. Thus far he appears clothed with ample official authority. And we may here remark, that the defendant, *Maskell,* seems to have entertained no doubt upon that subject; for we find him, in his professional capacity, bringing a suit, in 1840, in the name of the administrator, against a debtor of the firm.

But it is shown that, near the close of the year 1840, *B. C. Robert* discovered a sealed paper purporting to be a will made by his deceased partner. He presented it to the Court of Probates in which the succession had been already opened, and under whose order he held his office; and prayed that the will might be opened, proved, and acted upon according to law. The will was accordingly opened: it was found to be an olographic testament. The hand writing was proved by witnesses, one of whom was the defendant, *Maskell;* and an order was made by which the will was recognized as being in due form. It was further decreed by the parish judge, as follows: " Being satisfied that said testator is dead, I have ordered said will to be executed, recorded, and deposited in my office, after signing the same, *ne varietur,* at the begining and end of each page."

Under this evidence it was contended that the appointment of the administrator was void. No authority has been adduced to sustain this proposition; and, in our opinion, it is clearly untenable. In the absence of a will, it was necessary that the succession should be administered; and the order appointing an administrator was clearly lawful, for the appointment in the will was inefficient until the probate. C.C. 1637.

But it is said that, as soon as the probate and order of execution took place, the authority of the administrator expired. This, also, is untenable. The ca-

pacity of the administrator, for the purpose of prosecuting an existing suit, could not cease until a successor was duly installed in his stead. An executor is not bound to accept the executorship. C. C. 1670. When the exceptions were tried, nearly three years had elapsed since the probate of the will. The executor named in the will, during this entire period, was silent. There was no call by him, upon the administrator, for an account; no demand of the assets, not even a notice to the probate judge that he was willing to accept the appointment. If the administrator was ousted by the mere order of probate and execution, then the succession was under the charge of no one; and all the provisions of the law, framed for the preservation of successions, which require administrators to account before they are discharged, which require them to continue in office until the estate is wound up, and which otherwise discountenance the abandonment of estates, must be disregarded. It is in this spirit that, in the analogous case of an executor, and of heirs claiming the succession from him, we find it provided that the testamentary executor, even after the expiration of his administration, is bound to continue to defend the suits commenced by, or against him, on account of the succession, until the heirs appear, or cause themselves to be represented. Civil Code, art. 1669.

The opposite view to that which we have adopted, might be convenient to debtors; but would involve the destruction of the rights of creditors, and the ruin of heirs.

Upon the point that the capacity of the administrator ceased, *ipso facto*, by his bankruptcy, we have been favored with no authority, and consider it untenable. The administration was a trust held for the benefit of heirs and creditors, and not to be blended with the personal condition of the administrator. It might have been a ground for provoking his removal; but, of itself, did not impair his official authority.

We have no hesitation, therefore, in saying that the decree of 6th October, 1843, overruling the exceptions, was properly rendered.

But it appears that, when the cause came up for trial on the merits, these questions were again raised, and the successor of the former judge, while he expressed his regret that he was prevented from deciding the cause on the merits, was of the opinion that, the right of the plaintiffs to prosecute the claim, was still examinable; and, dissenting from the conclusions of his predecessor, dismissed the suit, considering the right of action as vested in the assignee in bankruptcy, and the executor named in the will.

What we have said as to the authority of the syndic, need not be repeated: but a few remarks are necessary respecting the right of the administrator to continue the prosecution of this cause.

It is true that, since the exceptions were first decided, *Baker*, after a long interval, for the first time appeared in the court of probates and took the oath of office. This was in July, 1845. A petition was also presented in his name, in September, 1845, by the defendant, *Maskell*, as his attorney at law, praying that an inventory might be made. An order to that effect was made. No other action by the executor is shown. No inventory, no call upon the administrator for an account, no intervention in this cause, nothing whatever appears, to indicate that the executor takes any interest in the prosecution of a suit in which the interests of the succession are seriously involved, and the existence of which, if not known to himself, is, at least, fully known to his counsel.

In view of these facts, we are of opinion that we should be misinterpreting the law, and doing injustice to the creditors of an insolvent partnership and of an

insolvent succession, if we were to turn the present parties out of court, who are diligently, and in spite of the continued embarrassment which they have encountered, prosecuting a claim which no one else has shown any disposition to enforce. The assignee in bankruptcy cannot deny the authority of the syndic; and the executor has not taken the necessary action to oust the authority existing in the administrator to prosecute this cause.

The counsel of defendants refers, in his brief, to a previous suit, brought by *Dwight*, syndic, alone, against *Maskell* alone, in which the suit was dismissed upon the exception that, the plaintiff was not the syndic, as by him alleged, the proceedings under which he was appointed being illegal and void. He argues in his brief that, the judgment constitutes *res judicata*. No plea of *res judicata* was filed in the court below. Whether such a plea may be made for the first time in this court, is a question which we do not think it necessary to decide. It is certain that the exception of *res judicata* must be specially pleaded. Here the defendants have filed an answer to the appeal, in which they simply pray an affirmance of the judgment, but have not pleaded *res judicata*. In the matter of the *Commissioners of the Atchafalaya Bank, on the opposition of Barker*, we held that, the mere suggestion and argument, by counsel, in his brief, of matters upon which he relied for a change of the judgment in the appellee's favor, did not give the party a right to have them considered, where the appellee had filed no answer praying an amendment. The propriety of the rule is equally obvious in the present case; and there certainly are no equitable considerations which would make it proper for us now to give the party leave to file such a plea. It is proper also to remark that, the decree of 6th October, 1843, was partially executed by the defendant, *Maskell*, as will be hereafter noticed.

Upon the merits, we will first observe that, the defendants, *Simon* and *Maskell*, were associated in the practice of the law at the time of the receipt of the claims for collection, in June, 1838. They so continued until the year 1840, when the defendant *Simon* left the bar. It is proper to remark that the business thus placed in their hands, seems to have been, as between the partners, almost exclusively conducted by the defendant, *Maskell*. But, as the defendants were partners, as the receipt was signed in the partnership name, and as it is not proved that their clients subsequently abandoned the joint liability and agreed to look to *Maskell* alone, we must consider both the defendants liable. On this point it is proper also to remark that, in a former action upon the receipt against *Maskell* alone, the exception was pleaded that the liability was joint, and that the action could not be maintained against *Maskell* alone.

One of the grounds of defence, suggested in argument, is that, the assets were placed in the hands of the defendants for the purpose of paying certain creditors, and hence that the defendants could not give them up without the authority of such creditors. And we find that, about four years after this suit was instituted, a petition of intervention was filed by *Lewis & Co.*, creditors of *P. H. & B. C. Robert*, *Maskell* acting as their attorney, in which they allege that *P. H. & B. C. Robert* placed as a pledge or pawn in the hands of *Maskell* and *Simon*, the notes and claims in question, for the benefit of the intervenors; and that by said pawn or pledge they have a privilege upon them. We have seen that the receipts state that the claims were received for the account of *P. H. & B. C. Robert*; and, although the evidence shows that, from time to time, payments were made by *Maskell* to creditors, sometimes by *P. H. Robert's* direction, and sometimes without any previous or express instruction shown, yet the intervenors have wholly failed to show that any act of pledge was exe-

<div style="text-align: right">Dwight<br>v.<br>Simon.</div>

DWIGHT
*v.*
SIMON.

cuted. Nor, as to the other creditors, do the evidence and acts of *Maskell* show that the assets were placed beyond the control of the firm, so as to constitute the transaction an assignment for the benefit of creditors.

After the decision on the exceptions, made in 1843, a number of the uncollected claims were deposited in court, by *Maskell*, upon his motion, to remain there subject to the syndic's order, upon his receipting for them. Subsequently the case was referred to auditors, who, after hearing testimony offered by the parties, made a report, in which, after stating the accounts, reserving the question of the liability of the defendants for alleged negligence with regard to collections and some other disputed matters, they found a balance against the defendants, independent of the claims against them not reported upon, of $1,247 88. To portions of this report both parties objected; and it does not appear that the objections to it were formally acted upon, before the submission of the cause to the court upon the issue joined. At the trial, the report of the auditors, with the evidence, and also the oppositions, were offered in evidence by the defendants; and an agreement was entered that, the report should be deemed conclusive and binding so far as not specially objected to. This report, which appears to have been diligently prepared, has therefore received our attention, and we have given it much weight in forming our conclusions.

We think the auditors properly rejected the items charged by the defendants for payments of individual debts of *B. C. Robert*, and sums given to his wife, although some of them appear to have been paid or given by his instructions, or with his implied approbation. It is true that, by the articles of dissolution, *B. C. Robert* was charged with the liquidation of the firm; and if *Maskell* had handed over monies collected to the liquidator, he could not have been answerable for their subsequent misappropriation to his own use. But, as a partner who uses the partnership funds to pay his individual debts, commits a fraud upon the firm, so an agent, acting for the benefit and in the business of the firm, who, even by the express direction of one partner, applies the money of the firm in his hands to the payment of the individual debts of that partner, or otherwise to that partner's individual use, violates his legal duty as the agent of the firm, and must be held liable to the creditors, whom these plaintiffs represent. His recourse is against the partner individually, by whose instructions he acted, and to whose benefit the payments inured.

The auditors excluded from this account, by which they ascertained the balance above mentioned, certain credits allowed in the account with the partnership prepared by the defendant *Maskell,* which was before the auditors. They perhaps entertained the opinion that these credits, which were for various sums received for account of the firm by the defendant, did not properly enter into the litigation, because the claims upon which they were made were not comprehended in the receipt upon which the action was brought. But, considering the prayer for general relief made by the plaintiff, the answer of the defendant, with its annexed account, and the manner generally in which the case has been brought before us, we are of opinion that these credits are to be considered, and that the plaintiffs should have the benefit of them.

The auditors appear to have charged interest on the amount of the claims entrusted to the defendants for collection, and collected, from the maturity of the claims down to the month of December, 1846, when their report was made; and upon the payments made by the defendants from the date of the maturity of the obligations paid, to October, 1846. We think this was erroneous.

<div style="float:right">DWIGHT<br>*v.*<br>SIMON.</div>

Upon examining the accounts, we find that the latest collections of the defendants were in 1841, and their latest payments, also, in that year ; and it was in that year also, that the plaintiffs put them in default. From the amount of cash received by them, we will deduct the payments for which they are entitled to credit, and give interest on the balance from the judicial demand. We have to remark, in this case, that the account was not of that character where, from mutual debits and credits as between merchants, the entire means of liquidation may not be in the power of either party. Here, the means of liquidating and ascertaining the balance were fully in the hands of the defendants, that is to say, of *Maskell*, one of the firm, who knew what had been received for the account of the partnership of *P. H.* and *B. C. Robert*, their employers, and what had been paid for their account; and who were bound also to know that the payments for the individual benefit of *Robert* were not lawful. Moreover, it seems to us that, an attorney at law should not be held to a less onerous responsibility, in such a case, than an attorney in fact; and we find it declared by the Code that, "the attorney is answerable for the interest of any sum remaining in his hands, from the day he becomes a defaulter by delaying to pay it over." C. C. art. 2984.

We allow compensation, for professional services rendered before the call made upon the defendants to account and deliver the assets and balance in their hands. We adopt, on this point, the amount allowed by the auditors, as a sufficient compensation for all the professional services of the defendants.

The auditors expressed no opinion upon the question of the alleged want of diligence in the collection of the assets. Under the evidence, we have not been able to come to a satisfactory conclusion, so as to close that part of the case. We shall reserve the question of the alleged liability of the defendants, on that score; and also the question, whether any, and what, damages have been incurred, by refusing to deliver the uncollected assets when required to do so.

The defendant *Simon* has disclaimed all agency in the receipt, or detention, of the notes and accounts entrusted to *Simon & Maskell* for collection, or of their proceeds; and we do not find that he had any participation in this business; but, we do not think this fact of non-interference exonerates him, in any manner, from the responsibility incurred by the partnership, to whose charge the claims were confided. The parties were attorneys and counsellors at law, practising in their profession, and, as we conceive, are equally responsible towards their clients for monies collected and not paid over.

It is, therefore, decreed that, the judgment of the district court be reversed, and that *Wm. C. Dwight*, syndic, and *Raynard C. Robert*, administrator, do recover from *Edward Simon* and *Thomas Maskell*, the sum of sixteen hundred and ten dollars and sixty-nine cents, with interest thereon from the 22d Sept. 1841, and costs of suit in both courts; the said sum being for monies collected previous to said date, deducting the payments and charges allowed them according to the previous opinion. And it is further decreed that, the remaining portion of said claim of said *Dwight*, syndic, and *Robert*, administrator, to wit, for the possession of the claims not collected at the date of the institution of this suit, and for damages for the detention thereof, be remanded for a new trial. It is further ordered that, the intervention of *Davis & Co.* be dismissed at their costs. *

---

*The decree in this case and the paragraph immediately preceding it, were written by the Chief Justice, at the September term, 1849, and added to the opinion prepared by SLIDELL, J.                                                                                                    R.