A. F. RIGHTOR *v.* JOHN SLIDELL.

The proper mode of seizing a debt existing in the form of a judgment, is a notification of seizure by the Sheriff to the judgment debtor.

When third persons seek to annul a judicial sale, it is essential for them to show that they have been injured by the sale; otherwise they have no right to interfere with it.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J. *S. L. Johnson,* for plaintiff:

1. The seizure of the judgment of *Rightor* v. *Slidell,* by the United States Marshal, by service on *Slidell,* the debtor of the judgment, of the notice copied into the statement of facts, was a good, valid, and effectual seizure, and nothing in law, or in the nature of the case, required a resort to the provisions of the 13th section of the Act of March 20th, 1839.

Article 647 of the Code of Practice is, in these words: "But if the debtor has neither movable, nor slaves, nor immovable property, the Sheriff may seize the rights and credits which belong to him, and all sums of money which may be due to him, in whatsoever right, unless it be for alimony or salaries of office."

This article introduced no new principle or rule into our law. It was merely a declaration of the existing law which we derived from that of Spain and Rome. *Flower et al.* v. *Livingston,* 2 N. S. 615. 5 N. S. 180. Dig. 42, 1, 15, sec. 8, *et seq.*

No objection is made to the seizure in this case, except that it was not made by propounding interrogatories to the appellant under the Act of 1839. This assumes that the provisions of that act must be followed under penalty of nullity in all cases of seizure of incorporeal rights even when existing in the form of judgments. Prior to the existence of that act, and now, but for its existence, the seizure made in this case would be exceptionable. This leads us to scrutinize the act to see what there is in it to justify the assumption.

It was at first applicable only to the parish of Orleans, and began by declaring, " that in the parish of Orleans, whenever a party, plaintiff in a cause, has applied for a writ of *fieri facias* against the defendant, and has reason to believe that a third person has property or effects in his possession or under

his control belonging to the defendant, or is indebted to him, he may cause such third person to be cited to answer under oath such interrogatories," &c., *pourra faire citer*, &c.

The terms which are used in the act, it will be observed, are facultative and not imperative, nor is there the least intimation of the prohibition or exclusion of the modes of seizure which had been previously employed. There is nothing expressly or by implication repealing any former law or prescribing under penalty of nullity the observance of the statute. It is purely remedial, offering a new means to the creditor to obtain the great object of the machinery of justice, which is to secure the payment of that which is due.

It is obvious that this statute can be of very little use, where the indebtedness of the party in whose hands the seizure was laid, had been established by a judgment. The judgment debtor might even have good reason to oppose this mode of proceeding, as leading to several judgments, executions, and mortgages against him for the same debt and cause of action.

The last clause of the act in question is in these words : " The property and effects in the possession of a third person, belonging to the defendant, or debts due by him to such defendant, shall be decreed to be levied as by the Sheriff, from the date of the service of the interrogatories on such persons."

This part of the statute was necessary in order to attribute to the commencement of suit by citation and service of petition with interrogatories, the force of a seizure, which nothing in the nature of the proceeding gives to it.

No nullity then can be argued from the terms of this statute under Art. 12, C. C. There is no repeal of Arts. 642, 647, C. P., there is only auxiliary means of enforcing that article in certain cases.

These views of the law are sustained by the decisions of the courts. *Harris* v. *The Bank of Mobile*, 5 Ann. 538. After reviewing the case cited, the court says : " These decisions do not conflict with the principle, that an incorporeal right may be seized by notifying the person or corporation in possession of the subject of the right. The inability to seize the corporeal evidence of the right, does not prevent the creditor from seizing the right itself, by notifying the keeper of the subject matter of the right." In *Hanna* v. *Bry*, 5 Ann. 656, the court says : " We understand the proper mode of seizing a debt existing in the form of a judgment, is a notification of seizure by the Sheriff to the judgment debtor ; and such notification, we think, was effected in the present case by the process of garnishment served upon the judgment debtor." The language of this decision is in perfect accordance with our view of the Statute of 1839, making it an auxiliary and cumulative remedy, not an exclusive one. The most essential element of the seizure of a judgment is the notification to the debtor of the judgment in order that he may not pay it, in ignorance of our seizure, to the owner of the judgment or to some fraudulent or negligent assignee. Sales of personal property are perfected as to third persons, by delivery, by the vendee getting actual possession of the property. As to incorporeal rights, " the transferee is only possessed, as it regards third persons, after notice has been given to the debtor of the transfer having taken place." C. C. 2613. The Sheriff, in making seizures of personal property, follows the principle of the rule for sales. If the property be corporeal, he must take actual possession of it, or there is no seizure. If it be an incorporeal right that he has to seize, he must take possession of it by notice of the seizure to the debtor of the right, as the conventional transferee must do under the article just cited. At common law, choses in action are not assignable, and therefore not seizable, and the creditor is obliged to resort to a bill in Chancery to make them available. 4th Kent, 431, note C.

All the doubts about the validity and effectiveness of the seizure of incorporeal rights by notice to the debtor of them, are of common law origin, and are discordant with the spirit of the civil law, which looks upon incorporeal rights as forming the subject of sales and seizures equally with corporeal property. Our act of 1839 gives the creditor the benefit of an immediate discovery and of compelling his debtor to pay over to him, and thus gives us the benefit in a very simple way of the creditor's bill in Chancery. It is in many cases a most useful remedy, but in cases like that before the court it is superfluous. Cases may be supposed in which its enforced application would be depriving the creditor of his rights. His debtor might have sold his property on long terms, and his creditor, by this remedy, would have to wait to be paid

as the terms fell due. For this statute, says the court, shall order the debtor " to pay such sum, if the same be due, and if not, when the same shall be due." Now, the Code of Practice contemplates the sale of property seized under a *fi. fa.* in order to make the money for the plaintiff without unnecessary delay. Art. 642. And when the debtor can sell his incorporeal rights in order to realize ready money, there is no reason why they should not be sold, in execution, to pay his debts.

The counsel for the appellant relies upon several cases which will now be noticed. The first is that of *Scott* v. *Niblett*, 6 Ann. 182. In this case the Sheriff attempted to make a seizure of a note on file in a suit in court, by asking the clerk for the note, taking a description of it and handing it back to the clerk, with a notice of seizure. The court considered the note tangible property, of which the actual possession is indispensable to a valid seizure, as is evident from this extract from the opinion : " We have always held that in order to make a valid seizure of tangible property, the thing levied upon must be taken into actual possession by the officer. *Gaines* v. *Merchants' Bank*, 4 Ann. 371. A promissory note, endorsed in blank by the payee, is of that class of property. It is not merely the evidence of debt; with its endorsement, it contains the obligations of several parties, and is the subject of sale and delivery as much as any other movable." A judgment is not tangible property and is not sold and delivered by delivery of the record, nor can it be seized by seizing the record. *Hanna* v. *Bry*, 5 Ann. 656.

The next is a judgment in the matter of *Bonner & Smith* v. *Eunice Carl*, in which *H. Carl*, co-surety of *Eunice Carl*, on a twelve months' bond, caused himself to be subrogated to the plaintiffs, *Bonner & Smith*, issued a *fi. fa.* against *Eunice Carl*, and seized her rights in the hands of *H. C. Young et al.*, and then filed a petitition setting forth the seizure, alleging indebtedness to *Eunice Carl*, in an amount sufficient to satisfy the writ, and asking judgment against them. This cause was excepted to as an endeavor to take advantage of the remedy given by the Act of 1839, without propounding interrogatories and conforming to the conditions of the act. Judgment, 10th April, 1854. " As a general rule," says the court, "a debtor is subject to the pursuit of his his creditor, and not of the creditor of his creditor. To facilitate judgment creditors in the collection of their claims, the remedy of the statute of 1839, was given, and those who desire its benefit must exercise the remedy in the manner provided by the statute, to wit, by citing the third person to answer interrogatories."

This decision, in no manner, conflicts with anything that we contend for. An exorbitant right is given by the Statute of 1839, that of suing for a debt due to another before we have got title to it; that in many cases of suing for a part only of the debt due to another, leaving the debtor of it exposed to other suits for the remainder. It is evident that an exceptionable right of the kind given for the benefit of the seizing creditor must be exercised by him in strict conformity with the statute which grants it, and the court, in the case quoted, properly sustained the exception of the defendant on this ground. But where is its applicability to the present case?

Another case relied on by the appellant is, that of *S. O. Nelson & Co.* v. *Simpson*, decided on the 15th instant. It is perhaps sufficient to say that this was a case of an attachment by mesne process, and that the opinion confines itself strictly to such cases. The attachment moreover was made by a notice of seizure of the most general and comprehensive kind. In attachments generally, the jurisdiction of the court cannot be determined without the answers of garnishees, and there is no reason in this case for making a rule, which is indispensable in the great majority of cases, yield to the few exceptions. An attachment moreover by mesne process is an invasion of the defendant's rights of property, before any claim is proved against him to justify it; is therefore a harsh measure, and is construed strictly against the plaintiff and favorably to the defendant. No inference can safely be drawn from this case in favor of the appellant's pretentions.

Looking then to the practice and jurisprudence which have always prevailed in Louisiana, to the provisions of the Code of Practice, to the principals of the civil law, to the terms of the Act of 1839, and the absence of any thing imperative or exclusive in them, and finally to the latest decisions of our courts, we come to the conclusion that nothing in our law, nor in the nature of the

case required us to propound interrogatories to the judgment debtor in order to make a valid seizure.

2. At the time the seizure was laid in the hands of the appellant he had no interest in contesting it; it was a matter of indifference to him whether the judgment which he owed was paid to us or to our debtor. He was a simple stakeholder for three years while we were battling with other claimants. He then gets the control of a judgment against *Rightor*, with the view of contesting the validity of our seizure of *Rightor's* judgment against him, and pleading the extinction of it by compensation. We say that the stakeholder had no interest, and therefore no capacity to object to our form of proceeding when it was taken. *Point de nullités sans griefs*, is a maxim that may well be applied to the appellant's pretentions. If he saw fit voluntarily to change his position of disinterested stakeholder for that of interested party, the speculation was at his risk, and can give him no right to propose the nullity of proceedings prior to his acquisition of an interest, which the party then having an interest never opposed, and has now most fully ratified, if there was any need of ratification. In *Leblanc* v. *Dubroca*, 6 Ann. 360, it was held, that when third persons seek to annul a judicial sale on account of informalities, it is essential for them to show they have been injured by the sale, otherwise they have no right to interfere with it. The appellant cannot pretend that he has been injured by our proceeding, when the pretended informalities were committed long before he had an interest in opposing them were known to him, and were the inducement to his acquiring an interest. If he has been injured at all, it is by his speculation upon our loss, and that speculation we do not suppose to have been made at any great outlay or exposure, as it would be easy to get the control of a judgment in such a case for a promise of a share of the profits.

The doctrine that we contend for has repeatedly been the basis of the discussions of our courts. *State* v. *Martin*, 2 Ann. 667. *Fortier* v. *Slidell*, 6 Ann. 56. *Conrey* v. *Copeland*, 3 Ann. 452. *Monition of Johnson*, 3 Ann. 656.

*Clarke & Boyne*, for defendant and appellant, cited *Scott & Niblett*, 6 Ann. 182. *Bonner & Smith* v. *Carl*, 9 Ann.

VOORHIES, J. (SLIDELL, C. J., and BUCHANAN, J., declined sitting.) On the 5th of January, 1854, a rule was taken on the defendant by *Alfred Edwards*, subrogated to the rights of the plaintiff, to show cause why a writ of *fieri facias* should not issue against him in this case.

The rule was made absolute, and the defendant appealed.

On the 25th of February, 1848, the United States Marshal, by virtue of a *pluries* writ of *fieri facias* in the suit of *Arthur Tappan & Co.* against *A. F. Rightor*, notified the defendant, *John Slidell*, in writing, that he had seized in his hands, "the goods and chattels, rights, credits, moneys, effects, or property of any kind," which he might have belonging to the said defendant, *Rightor*, or as much thereof as would satisfy the writ, say $5000; and, in the notice, added: "I seize in your hands, for the purpose aforesaid, particularly a debt due by *John Slidell* to said defendant, *A. F. Rightor*, on which a judgment has been rendered by the First Judicial District Court of the State of Louisiana, numbered on the docket of said court, 20,226, and confirmed by the Supreme Court against said *John Slidell*, and in favor of said *A. F. Rightor*, being the same judgment which has already been levied on in this suit, under the *fi. fa.* issued herein on the 6th of December, 1842." On the next day, *A. F. Rightor* was also notified of the seizure thus made in the hands of *John Slidell*. In 1851, *John Slidell* was subrogated to the rights of *Jennison Eager*, in a judgment in favor of the latter, exceeding in amount that in favor of *Rightor* against *Slidell*. *Rightor* was notified of this transfer and subrogated in February, 1851. In September of the same year, *Alfred Edwards*,

plaintiff in the rule, became the purchaser of the judgment in favor of *Rightor* against *Slidell*, at a sale made by the United States Marshal, by virtue of the writ of *fieri facias*, in the suit of *Arthur Tappan & Co.* against *A. F. Rightor*. *Rightor*, being notified of the rule taken in this case, answered that he was notified of the proceedings by which *Edwards* became the purchaser of the judgment in his favor, and waived any exception or objection, if any existed, which he could have thereto, for annulling either the seizure or sale of said judgment. It is admitted by the parties, that the Code of Practice, and the amendments thereto, were adopted in December, 1839, as the rules of the United States Circuit Court.

The judgment of *Jennison Eager* is pleaded in compensation by the defendant in the rule. In order to sustain his plea, it is urged by him that the proceeding under the writ of *fieri facias* in the case of *Arthur Tappan & Co.* against *A. F. Rightor*, were irregular and insufficient to effect a valid seizure in his hands.

Under this state of facts, the District Court, in our opinion, did not err in maintaining the validity of the seizure and making the rule absolute. The seizure was made under Articles 642 and 647 of the Code of Practice, the last of which provides: " But if the debtor has neither movable, nor slaves, nor immovable property, the Sheriff may seize the rights and credits which belong to him, and all sums of money which may be due to him, in whatsoever right, unless it be for alimony or salaries of office."

The Act of March 20th, 1839, section 13, produced no change in either of these articles, but only gave an auxiliary and cumulative remedy to the judgment creditor to secure the payment of that which is due to him. In the case of *Harris* v. *The Bank of Mobile*, 5 Ann. 538, it is held, " that an incorporeal right may be seized by notifying the person or corporation in possession of the subject of the right. The inability to seize the incorporeal evidence of the right, does not prevent the creditor from seizing the right itself, by notifying the keeper of the subject matter of the right." In *Hanna* v. *Bry*, 5 Ann. 656, it is held, that the proper mode of seizing a debt existing in the form of a judgment, is a notification of seizure by the Sheriff *to the judgment debtor*." These decisions harmonize with our construction of this statute. Under Article 2613 of the Civil Code, in relation to the transfer of incorporeal rights, such notice is sufficient as it regards third persons. We do not think that the cases, to which we have adverted, conflict in any manner with any of those on which the appellant's counsel rely, namely, *Scott* v. *Niblett*, 6 Annual, 182 ; *Gaines* v. *Merchants' Bank*, 4 Ann. 371 ; *Bonner & Smith* v. *Eunice Carl*, and *Nelson & Co.* v. *Simpson*. It is settled, that when third persons seek to annul a judicial sale, it is essential for them to show that they have been injured by the sale, otherwise they have no right to interfere with it. 6 Ann. 360. The appellant cannot deny that he was notified of the seizure previous to his having acquired any right to the judgment of *Jennison Eager* against *A. F. Rightor*, and must therefore submit to the injury or loss to which he has exposed himself by his own voluntary act.

It is therefore ordered and decreed, that the judgment of the District Court be affirmed, with costs.