## CALDER et al. v. HENDERSON et al.

(Circuit Court of Appeals, Fifth Circuit. January 23, 1893.)

### No. 63.

1. REVENUE LAWS—SUGAR BOUNTY—RIGHTS OF SUGAR RAISERS.

The sugar bounty provided for by the act of October 1, 1890, is not a pure gratuity by the government, or a mere recompense for personal services, but is compensation offered for the purpose of stimulating production; and when a producer accepts the offer, and complies with the statute, there is a contract between him and the government.

2. SAME—VESTED RIGHTS—ASSIGNMENT FOR BENEFIT OF CREDITORS.

A claim for such bounty, earned by raising sugar, is a vested right, constituting property, which is subject to be sold on execution under the laws of Louisiana, and will therefore pass, under the insolvency laws, to the provisional syndics, when the owner makes a cession of his property for the benefit of creditors.

3. APPEAL—DECISION—MATTERS NOT APPEALED FROM.

On an appeal by defendants from a general decree against them, the plaintiffs cannot have reinstated an injunction which was dismissed by the trial court as to one of the parties, when they took no appeal therefrom.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

In Equity. Suit brought in the civil district court for the parish of Orleans by William Henderson and Leopold Loeb, provisional syndics of John Calder & Co. and David R. Calder, against John Calder & Co. and David R. Calder, to enjoin them from disposing of a claim against the United States for sugar bounties earned. Defendants removed the case to the United States circuit court, where judgment was rendered against them, from which judgment they appealed. Affirmed.

Statement by PARDEE, Circuit Judge:

John Calder & Co., and David R. Calder individually, on the 15th day of February, 1892, made a cession of their property under the insolvency laws of Louisiana, and William Henderson and Leopold Loeb were appointed provisional syndics. The insolvents filed a schedule of their assets and liabilities, upon which a memorandum was made of bounty allowance claimed to be the property of David R. Calder, which he was authorized by law to keep, as exempt from seizure under any process of court, and as not subject to be surrendered under the insolvent laws of the state. The provisional syndics brought this suit in the civil district court for the parish of Orleans, alleging the above facts, and further averring that the amount of bounty which David R. Calder is to collect from the national government is not stated upon the schedule; that the amount thereof exceeds the sum of $40,000, and is due to said David R. Calder because of certain claims made by him under a license granted to him by the national government; that the firm of John Calder & Co. and David R. Calder, the insolvents, were actively engaged, for a number of years prior to their surrender, in commercial business in the city of New Orleans, and in the cultivation of sugar plantations; that they cultivated four different plantations, the property of John Calder & Co., to wit, the Alice C. and the Choupique, situated in the parish of St. Mary; the Aragon, in the parish of Terrebonne; and the Orange Grove, in the parish of Lafourche,—upon which plantations the sugar was produced for which the bounty claimed is due; that under the insolvent proceedings and surrender there passed to the creditors of said insolvents all the property, either movable or immovable, or other rights or claims, except that which the law authorizes insolvents to retain, and which property should come under the control of petitioners, as provi-

sional syndics; that the bounty allowance claimed by David R. Calder for sugar produced in the United States, under the act of congress, is an asset belonging to said insolvents, and is, by the operation of the insolvency laws of Louisiana, subject to the control of petitioners, as syndics, to be applied to the payment of the debts of said insolvents, and is not exempt, as between petitioners and said John Calder & Co. and David R. Calder, from the operation of the insolvent laws of the state. Complainants also averred that they had reason to fear that, if the said insolvents should obtain possession of said bounty, they would divert the same to the prejudice of their creditors; and upon the prayer of said syndics an injunction was granted, ex parte, prohibiting David R. Calder from disposing of the drafts received by him from the United States for such bounty allowance, and also prohibiting Andrew Hero, assistant treasurer of the United States, from paying such drafts pendente lite. The defendants moved the suit into the circuit court of the United States for the eastern district of Lousiana, as one arising under the laws of the United States. In the circuit court the petition of the syndics was by agreement treated as a bill in equity, and the defendants moved to dissolve the injunction, and also demurred to the bill. Upon a hearing the motion to dissolve the injunction was denied, except as to the assistant treasurer of the United States, as to whom it was granted, and the bill dismissed, and the demurrer of the defendants was overruled. The defendants electing to stand upon their demurrer, a final decree was made, adjudging that said bounty allowance formed a part of the assets of said insolvents, and passed, by their assignment, by operation of law, to their syndics, for the benefit of creditors; and said insolvents were enjoined from collecting or disposing of said drafts, or parting with their possession, except to said syndics. From this decree the defendants appealed to this court.

John D. Rouse and Wm. Grant, for appellants.

Henry L. Lazarus and Horace E. Upton, for appellees.

Before PARDEE and McCormick, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge, (after stating the facts.)  The assignment of errors covers substantially the merits of the case, and the case presents the question whether the claims of David R. Calder under the act of congress approved October 1, 1890, for allowance of bounty for the production of sugar earned on the plantations of John Calder & Co. in the year 1891, passed to the creditors of John Calder & Co. and David R. Calder individually, under the insolvent laws of Louisiana, by the cession of property made and accepted on the 15th day of February, 1892.  Prior to 1890 the production of sugar was fostered by the government of the United States by a protective tariff, which imposed such duties upon imported sugar as practically enabled the producers in this country to obtain a price for the sugar produced by them, compensatory of the cost of production; it being well understood that, without the enhanced price resulting from the tariff, sugar in quantities could only be produced in the United States at a loss to the producer.  In 1890 the government of the United States, without changing its policy in respect to sugar produced, changed the method of encouraging production by practically placing sugar upon the free list, and enacting the bounty system.  The law granting the bounty, so far as it is material to this case, is as follows:

"231. That on and after July first, eighteen hundred and ninety-one, and until July first, nineteen hundred and five, there shall be paid, from any mon-

eys in the treasury not otherwise appropriated, under the provisions of section three thousand six hundred and eighty-nine of the Revised Statutes, to the producer of sugar testing not less than ninety degrees by the polariscope, from beets, sorghum, or sugar cane grown within the United States, a bounty of two cents per pound, and upon such sugar testing less than ninety degrees by the polariscope, and not less than eighty degrees, a bounty of one and three fourths cents per pound, under such rules and regulations as the commissioners of internal revenue, with the approval of the secretary of the treasury, shall prescribe.

"232. The producer of said sugar, to be entitled to said bounty, shall have first filed, prior to July first of each year, with the commissioner of internal revenue, a notice of the place of production, with a general description of the machinery and methods to be employed by him, with an estimate of the amount of sugar proposed to be produced in the current or next ensuing year, including the number of maple trees to be tapped, and an application for a license to so produce, to be accompanied by a bond in a penalty and with sureties to be approved by the commissioner of internal revenue, conditioned that he will faithfully observe all rules and regulations that shall be prescribed for such manufacture and production of sugar." 26 St. at Large, p. 583.

It is to be noticed that the bounty offered by the statute is for sugar thereafter to be produced, and to those producers only who shall accept the provisions of the act, and comply with its terms, as to taking out a license, giving bond in penalty, etc. In our opinion, the "bounty," so called in the statute, is not a pure gratuity or donation by the government, but was intended to be, and is in fact, a standing offer of reward and compensation to sugar producers, to encourage and stimulate them in the otherwise losing business of producing sugar in the United States. It was intended to be, and is in fact, a guaranty of reimbursement to sugar producers accepting the terms of the statute, of part, at least, of the cost of production. When a producer of sugar accepts the offer, and complies with the statute, it would seem to be as much a contract as it is possible for any citizen to make with the government. All the elements of a contract are present,—the terms, the consideration, and the lawful object. It is true that the government can repeal the statute, and refuse to pay the bounty earned upon sugar that has been produced under the promise, and within the statute, but so could the government do with an admitted contract for any public work. The appellants contended in the circuit court, as in this court, that the bounty offered by the government of the United States was a pure gratuity, without consideration, revocable at pleasure, and, until payment of the same is actually made, is not property, but only a hope that may or may not be realized. The judge of the circuit court, in a very clear and well-reasoned opinion, discussed the case on this line, and, citing Williams v. Heard, 140 U. S. 529–531, 11 Sup. Ct. Rep. 885, held that sugar bounty earned was property. In the cases of Comegys v. Vasse, 1 Pet. 193, and in Williams v. Heard, supra, it was held that equitable claims against our own and foreign governments, not arising under any statute, and not allowed at the gate of bankruptcy, were expectancies coupled with an interest, and, as such, were property rights that passed under assignment in bankruptcy, under both the bankrupt laws of 1800 and of 1867. The claim of David R. Calder, who accepted the terms of the act for the year 1891, for sugar produced during that year, is a claim arising under a contract,—a just

claim,—and one that the government cannot avoid otherwise than by repudiation. It is more than a possibility coupled with an interest. It is an actuality, a vested interest, (see People v. Board of State Auditors, 9 Mich. 327,) and a right for which there is a remedy under existing statutes of the United States. The statute offering the bounty makes a standing appropriation to pay it, and it is the duty of the treasury officials to warrant for it; and if there is a dispute as to facts or amounts the court of claims has jurisdiction. See "An act to provide for bringing suits against the government of the United States," (24 St. at Large, p. 505.) The law governing insolvency proceedings in Louisiana, so far as this case is concerned, is as follows:

"The debtor shall annex to his petition his schedule,—that is to say, a summary statement of his affairs, and the losses he may have experienced,—mentioning the names of his creditors, their places of residence, and the amount of their respective claims; and the schedule shall, besides, contain a statement of all his property, as well movable as immovable, and his rights and actions, (except those which hereinafter are secured to him,) together with a mention of the approximate value of the property by him assigned." Section 1786, Rev. St.

"The debtor is not obliged to comprehend in his surrender any property that is not subject to be seized and sold on executions against him." Section 1787, Id.

"The debtor is not obliged to comprehend in his surrender any property that is not subject to be seized and sold in execution against him, but, with this exception, all his property must be surrendered." Article 2183, Rev. Civil Code.

"There are also rights which are merely personal, that cannot be made liable for the payment of debts, and therefore no contract respecting them comes within the provisions of this section. These are the rights of personal servitude; of use and habitation; of usufruct of the estate of the minor child; to the income of dotal property; to money due for the salary of an office, or wages, or recompense for personal services." Article 1992, Rev. Civil Code.

The appellants contend that, under these statutes, Calder's claim for bounty for sugar produced in 1891 did not pass to his creditors, because, they say, said claim was not subject to be seized and sold on execution; it was not placed upon the schedule as surrendered by the insolvent, and the claim is one for personal services, and therefore specifically exempt under section 1787. The limitation contained in section 1787 clearly applies to property exempt from execution, and does not include property which, although not exempt from execution, there is a difficulty, legal or physical, in seizing under execution. As a matter of Louisiana law, the claim of Calder against the government is one subject to seizure on execution; and while the officers of the government cannot be garnished, nor funds in their hands attached, there is no difficulty whatever, under the Louisiana practice, in levying an execution upon the claim, and selling the same according to law. La. Code Pr. art 647; Flower v. Livingston, 2 Mart. (N. S.) 615; Harris v. Bank, 5 La. Ann. 538; Rightor v. Slidell, 9 La. Ann. 606; McDonald v. Insurance Co., 32 La. Ann. 596; Levy v. Acklen, 32 La. Ann. 545. In the case of West v. His Creditors, 8 Rob. (La.) 123, it was held by the supreme court of the state of Louisiana that the claim of

an insolvent against the Mexican government, represented by a certificate of indebtedness on the Mexican government, passed by a cession to the syndic.    We quote from the opinion of the court as follows:

"The evidence shows most conclusively that this was a debt owing to West by the Mexican government, not only previous to the surrender of his property, in 1821, but to his application for a respite, in 1819. By refusing or neglecting to put it on his bilan at the latter period, or not surrendering it in 1821, when ordered, he has not acquired any right to it, nor can he, by putting the debt on his schedule when he went into bankruptcy, take it away from the syndic of the creditors, and deprive them of a fund out of which they are entitled to be paid. This debt was in fact as much given up as any other, in 1821. The books in which the entries were made, relating to it, were given up. Efforts were made to collect it, or get it recognized by the debtor. They were fruitless for a long time, but at last successful."

It is well settled, under the insolvent laws of Louisiana, that all the debts, rights, and property of an insolvent making a cession pass to his creditors by the surrender, whether placed on the schedule or not, and the syndic may sue to recover them. West v. His Creditors, supra; Lawrence v. Guice, 9 Rob. (La.) 219; Dwight v. Simon, 4 La. Ann. 490; Bank v. Horn, 17 How. 157; Geilinger v. Philippi, 133 U. S. 246--255, 10 Sup. Ct. Rep. 266. In the recent case of Butler v. Goreley, 146 U. S. 303, 13 Sup. Ct. Rep. 84, the supreme court affirmed the doctrine of Williams v. Heard, supra, and further held that section 3477 of the Revised Statutes of the United States, which prohibits transfers or assignments of claims upon the United States until after the allowance, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof, and then provides that they shall be freely made and executed in the presence of two attesting witnesses, does not apply to assignments in insolvency, nor to other transfers by operation of law.

We are of opinion that the claim of Calder for bounty under the statute of the United States is a claim for reward and compensation, and ripened into a vested interest by compliance with the statute, and the actual production of sugar thereunder.    While sugar may be, to some extent, produced by personal services, in the guise of labor, it is, in the main, produced by the cultivation of lands, and the use of expensive machinery; and it is a well-known fact that, under the present methods of raising sugar, capital and credit are both required to meet the necessary outlays for seed, labor, supplies, and machinery, and it would materially hamper the business if the proceeds of the crop, whether in bounty or otherwise, are not available to meet the demands of creditors who, it may be, have furnished the means which in reality produced the crop.    It would therefore tend to defeat the acknowledged object of the statute to give it the narrow construction that the bounty offered for the production of sugar was intended as a mere recompense for personal services.    Case v. Taylor, 23 La. Ann. 497, cited by appellants, does not appear to be applicable.    In that case Taylor had leased from the state a public canal, binding himself to make certain improvements, pay over to the state certain rents, and

acquiring from the state the right to receive and collect the tolls. Conceding the correctness of the ruling,—and it was doubted at the time by some of the judges of the court,—it goes no further than to hold that the contract was not a lease, and that the compensation which might result to Taylor for operating the canal was in the nature of recompense for personal services. In the case in hand there is no public work to be operated, no agency for the government, but a simple contract, as we view it, to pay so much for sugar produced under certain circumstances.

As to the present question, the claim, although in the name of David R. Calder, as holding the license, is really for sugar produced on the plantations of John Calder & Co., cultivated by that firm, and it should not be restricted to a claim for recompense for the personal services of David R. Calder. We are of opinion, therefore, that none of the contentions of the appellants are well taken; and we hold that the claim of David R. Calder against the United States for bounty for sugar produced upon the plantations of John Calder & Co. during the year 1891 is property that passed by the cession in the insolvency proceedings to the syndics of John Calder & Co. and David R. Calder individually, as a fund to be applied to the payment of creditors. The application of appellees to amend the decree of the circuit court by reinstating the injunction against the assistant treasurer, on the authority of Clark v. Clark, 17 How. 315, as approved in Phelps v. McDonald, 99 U. S. 298, cannot be considered, as complainants did not appeal.

The decree appealed from is affirmed, with costs.