THE PRESIDENT, DIRECTORS, AND COMPANY OF THE BANK OF TENNESSEE, PLAINTIFFS IN ERROR, v. LEWIS B. HORN.

By an act of the legislature of Louisiana, passed in 1826, all the property of an insolvent petitioner mentioned in his schedule, becomes vested in his creditors, from and after the cession and acceptance; and the syndic is directed to take possession of it, and to administer and sell it for the benefit of the creditors.

The courts of Louisiana have decided that all the property of the insolvent, whether included in his schedule or not, passes to his creditors by the cession.

Therefore, it is of no consequence whether or not the description of a particular piece of property be imperfect in the schedule; and a purchaser of it under the syndic has a better title than one derived from a judicial sale, where the judgment had been obtained after the acceptance of the cession and appointment of the syndic.

The validity of a state law of this description cannot now be considered as an open question.

THIS case was brought up, by writ of error, from the circuit court of the United States for the eastern district of Louisiana.

The facts are stated in the opinion of the court.

Horn, who was the purchaser of the property under the syndic, instituted a petitory suit in the third judicial district court of the State of Louisiana, against Bernard and Hare, who were tenants under the Bank of Tennessee. The Bank appeared to the suit, and prayed for the removal of the case to the circuit court of the United States for the eastern district of Louisiana, which was ordered.

The bill of exceptions which was taken upon the trial, showed the prayers addressed to the court by the counsel for the Bank, and the rulings of the court thereon. The bill was as follows:—

Be it remembered, that on the trial of this cause, the defendant, the Bank of Tennessee, preferred to the court the following propositions of law arising on the agreed statement of facts, on which it was insisted that this case should be decided in favor of said Bank, and against the plaintiff, Lewis B. Horn, to wit:—

1. The surrender of property by Peter Corney, in the state court of Louisiana, did not transfer to his creditors the ownership of any part or portion thereof, whether it was described or referred to in the schedule or not, but the same remained the property of Corney notwithstanding the surrender.

2. The words " all the property of such insolvent debtor, mentioned in said schedule, shall be fully vested in his creditors," used by the legislature of Louisiana, in the act of 1826, in regard to insolvent debtors, cannot and ought not to be construed to have reference to any property which is not mentioned in the schedule; but property not named in the schedule remains in the situation provided for by the laws of Louisiana in force prior to the passage of the act of 1826, and the rights of parties thereto were not altered by the passage of said act.

3. The only right which the creditors of Corney had in the property which was surrendered, was one analogous to that of pledge; that is, a right to take possession of and sell the property, according to the forms of law, and apply the proceeds to the payment of their debts, and was not a right of ownership.

4. That the surrender of Corney did not transfer to the creditors possession of any property whatever, whether mentioned in the schedule or not; but only conferred on them the right to take possession thereof, and to sell it in due course of law, to pay the debts due to them.

5. The right of the state court to cause to be sold such property as they had reduced into possession, did not oust the jurisdiction of the United States circuit court, in the case of the Bank of Tennessee *v.* P. Corney, but that court rightfully proceeded to render judgment against said Corney, and to execute the same, by seizing and selling the land in controversy.

6. Whatever may be the law in regard to° the property described in the schedule, and reduced into the possession of the creditors or syndic, the circuit court had an undoubted right to execute its judgment, by causing the seizure and sale of property not reduced into the possession of the syndic, and not described on the schedule.

7. The act of the Louisiana legislature of 1826, in regard to insolvent debtors, was not intended to change the law in regard to the rights of any persons named therein, to the property of the insolvent, or to change in any manner the mode of proceeding in the state court to enforce those rights; the legislature having been extremely careful, by provisos, to retain exactly the old law in regard to the rights of property; but the said act was intended only to effect a change in the remedies or final process used in this court, by changing the names of rights; and therefore the court was bound altogether to disregard the said act of the Louisiana legislature, so far as that act affects the process of this court.

8. The syndic and auctioneer and Horn, as vendor and vendee, had no right to treat the marshal's sale as a nullity, or in any way to complain of it, after the sale by the marshal to the Bank of Tennessee had regularly been made, without any legal opposition on their part.

9. The acceptance of the surrender, by the second district court of New Orleans, and all orders made and all proceedings had in that court, have reference only to the property named in the inventory, unless some other property is expressly named in the proceeding itself; and therefore, they could have no effect whatever on the right of the marshal to execute process, by a seizure of property not named in the inventory, and not expressly referred to.

And prayed that the said propositions should be sustained, and the cause finally decided in favor of the Bank; but the court ruled all these propositions against the Bank of Tennessee, and held the following positions to be law applicable to the case :—

1. That the surrender, in the second district court of New Orleans, divested Corney of all his rights of property, and vested those rights in the creditors.

2. That because we had no lien and no right of payment in preference to others, therefore we had no right to execute our judgment in the circuit court, by a sale of Corney's property, although the fact of Corney's insolvency was not made known to the court, and no objection was made to our proceeding.

3. That the property was in *gremio legis*, by virtue of the constructive possession arising from the surrender in the second district court of New Orleans.

4. That it is but fair to assume that the property now in dispute was designed to be included by Corney in his schedule.

To all of which propositions as well as to the whole opinion of the court, which was reduced to writing, and copy of which is annexed to the bill of exceptions, the counsel of the Bank of Tennessee objected, on the ground that the said propositions made by the court, and its opinion, were contrary to law and justice, and tendered this, his bill of exceptions, to be signed by the court, which is accordingly done.

This bill ι allowed so as to have the same construction as if the case had been submitted to a jury, and these exceptions had been taken on the trial.

J. A. CAMPBELL,
*Judge presiding.*

Upon this bill of exceptions, the case came up to this court, and was submitted by *Mr. Dunbar*, upon a printed argument of Messrs. *Stockton* and *Steele*, for the plaintiffs in error, and argued by *Mr. Janin*, for the defendant.

Mr. Chief Justice TANEY delivered the opinion of the court.

The facts in this case, as they appear on the record, are as follows :—

Peter Corney, jr., who resided in New Orleans, on the 7th of November, 1851, filed a petition under the insolvent law of Louisiana, in the second district court, declaring his inability to meet his engagements, and praying that a cession of his property might be accepted by the court, for the benefit of his creditors, and that in the mean time all proceedings against him should be stayed. To this petition, a schedule of his property

was annexed, in which it is apparent that the lot in question was intended to be included, but which is so erroneously described that it can hardly be identified; by the schedule alone, as a part of his estate.

The district court, on the day the petition was presented, accepted the cession, and ordered a meeting of the creditors on the 13th o. December following. The meeting was held accordingly, and a syndic appointed, and a report of the proceedings made to the court. On the 8th of March following the court authorized a sale of the property now in dispute, by the syndic; and at that sale, in May, 1852, the defendant in error became the purchaser.

The insolvent, at the time of his petition, was indebted to the Bank, the plaintiff in error, in a large sum of money, for which a suit was then pending in the circuit court of the United States for the eastern district of Louisiana. The Bank proceeded in its suit and obtained judgment; but the judgment was rendered after the cession had been accepted and the syndic appointed by the creditors. The Bank, however, issued an execution, under which this property was seized by the marshal, in February, 1852, and sold in the April following. The Bank was the purchaser at this sale, and obtained possession of the lot under it.

The defendant in error, after his purchase from the syndic, brought suit for the premises, and upon a trial in the circuit court of the United States for the eastern district of Louisiana, recovered a judgment; the court being of opinion that the property in question vested in the creditors, upon the cession and acceptance above mentioned, and was not liable to seizure under the execution which issued upon the judgment afterwards obtained by the plaintiff in error.

By an act of the legislature of Louisiana, passed on the 29th of March, 1826, all the property of an insolvent petitioner mentioned in his schedule is fully vested in the creditors, from and after the cession and acceptance; and the syndic is directed to take possession of it, and to administer and sell it, for the benefit of the creditors. At the time, therefore, when the Bank obtained judgment against Corney, the insolvent, he had no interest in the lot in question upon which the judgment could be a lien, or which could be seized upon, on execution issuing on that judgment. The right and title to it had, by operation of the law of the State, vested in the creditors, to be administered by the syndic, as their trustee.

Nor can the imperfect or erroneous description in the schedule have any influence on the decision. For it is well settled, by decisions of the courts of Louisiana, that all the property of the insolvent, whether included in his schedule or not, passes to his

creditors by the cession. 4 Ann. Rep. 492, 493; 11 Louisiana Rep. 521; 8 Rob. 128; 9 Ib. 223. Consequently, if, under the ambiguous or erroneous description in the schedule, this lot must be regarded as omitted, it still passed by the cession, and Corney had no remaining interest in it.

Neither can there be any constitutional objection to this law of the State. The validity of a state law of this description has been fully recognized in the case of Peale *v.* Phipps and others, 14 How. 368, and in the previous cases therein referred to, and cannot now be considered as an open question.

We see no error, therefore, in the judgment of the circuit court, and it must be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court that the judgment of the said circuit court in this cause be and the same is hereby affirmed with costs.