NIMICK, McCLOSKEY & Co. v. GEORGE INGRAM.

A creditor of an insolvent debtor who opposes the appointment of syndic, or charges fraud against the debtor, must do so within ten days next following the meeting of creditors, by written opposition, before the court, stating specially the several facts of nullity of the appointment or fraud alleged against the insolvent debtor. Any informality in the proceedings, when questioned, must be by direct action. No creditor will be permitted to disregard and treat as an absolute nullity a judgment accepting a surrender.

The acceptance for the creditors by the court vests in them all the rights and property of the insolvent, whether placed on the schedule or not; and the syndic may sue to recover them; but any creditor may show, provided it be contradictorily with the mass of the creditors, or their legal representatives, that any particular object or fund is not embraced in the surrendered estate, but is subject exclusively to his individual claim.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J. *Durant & Hornor* for plaintiffs and appellants.—Plaintiffs having seized the property of defendant on *fi. fa.*, were about selling it by the

sheriff, when they were enjoined by John Robertson, claiming ownership. The property was declared not Robertson's, but the execution debtor's. Ingram attempted to make a cession and thus to deprive plaintiffs of the effect and fruit of their execution. From a judgment sustaining this opposition plaintiffs have appealed.

We submit: 1. The fruits of the litigation in the contest between plaintiffs and John Robertson belong to the plaintiffs, are *their property*, and cannot be taken away from them by the subsequent cession of the fraudulent debtor.

There is certainly no principle of justice that would justify, on the part of the court, a course which would deprive the plaintiffs of the full benefit of their judgments. C. C. 1972. *Townsend* v. *Miller*, 7 A. 682, 632. *Decuir* v. *Venzey*, 8 A. 453. *Freeman* v. *Creditors*, 15 A. 397.

2. The surrender of the property was a pure sham, like the sale to John Robertson. The dates conclusively show this, *e. g:* the meeting of creditors is called for 21st July, 1859 : the proces-verbal is only filed on the 7th February, 1861, about the very day the injunction in Robertson's case was decided.

3. The property in dispute never was surrendered to the insolvent's creditors. His sham sale to Robertson was a perpetual estoppel to such a course. *Freeman* v. *Savage*, 2 A. 269; also, 5 A. 16; 4 A. 416; 5 A. 107; 10 A. 530, 585; 14 A. 140.

ILSLEY, J. This is an appeal from a judgment rendered by the Fifth District Court of New Orleans, on a rule taken on the plaintiffs by the defendant, to show cause why all process under their judgment in this suit, originally pending in the Fourth District Court, should not be stayed and set aside, as being in violation of a decree of said Fifth District Court, ordering all proceedings to be stayed against the property of the defendant, an insolvent debtor.

In order to comprehend the principal question involved in this controversy, it becomes necessary to make a comprehensive statement of all the facts which relate to it:

On the 16th June, 1859, the defendant Ingram made a surrender of his property to his creditors, in the Fifth District Court of New Orleans, and attached, to his petition for a cession, his schedule, mentioning thereon the names of his creditors, among which were those of the plaintiffs, Nimick, McCloskey & Co., their place of residence and nature of their claim.

On the same day the said court, by its decree, accepted, for the benefit of the creditors, the cession made by the insolvent, ordered a meeting of the creditors to be held on a certain day, before a notary public, for the purpose of deliberating on the affairs of the insolvent, and of appointing one or more syndics ; and appointed an attorney to represent the absent creditors. All judicial proceedings against the person and property of the debtor were, by said decree, ordered to be stayed.

Due and legal notice was given to the plaintiffs to attend the meeting of creditors, which was held on the 21st July, 1859.

It was not until the 7th February, 1861, that a copy of the proces-verbal of the proceedings of this meeting were deposited in the office of

the clerk of the said court, when, on motion of the defendant's counsel, the said proceedings were approved and homologated; and, the creditors not having attended the meeting and appointed a syndic, the court authorized the sheriff of the parish of Orleans to perform, in every respect, the functions of a syndic.

On the 3d October, 1860, the plaintiffs caused to be issued from the Fourth District Court of New Orleans (where their suit against Ingram was pending), execution on their judgment, and under it seized, as the property of the judgment creditor and in his possession, to satisfy their claim, the contents of a certain liquor store.

Previous to the day fixed for the judicial sale of the seized property, one John Robertson intervened by third opposition, and claimed it as belonging to him, in virtue of a sale thereof, which, by notarial act, bearing date 17th March, 1860, he pretended Ingram had passed to him; but it having been proved on the trial of this third opposition that Ingram had always retained the actual possession of the property claimed by Robertson, it was decided by the court that his title thereto was simulated and fraudulent, and his opposition was dismissed; whereupon the plaintiffs proceeded with their execution, and the sheriff's sale of the seized property was advertised to take place on the 27th February, 1861.

On the 12th day of February, 1861, a rule was taken by Ingram, in the Fourth District Court of New Orleans, on Nimick, McCloskey & Co., to show cause why all the proceedings in the said suit against him should not be transferred to the Fifth District Court of New Orleans, and cumulated with the insolvent proceedings.

This rule was tried contradictorily with the plaintiffs, and after argument of counsel was made absolute, and from this decree so rendered no appeal has been taken.

On the 20th February, 1861, Ingram took out of the Fifth District Court a rule on the plaintiffs to show cause why they should not respect the order of the court, suspending all proceedings against him, and why all further action under the writ of *fi. fa.*, sued out by plaintiffs on their judgment, should not be stayed and set aside.

This last rule, after trial and argument, was also made absolute, and from the decree of the court thereon the present appeal has been taken.

The appellants, Nimick, McCloskey & Co., urge in this court several grounds for the reversal of this judgment, which grounds substantially amount to this: That the plaintiffs, by their diligence and vigilance, have discovered the property seized by them, which was never surrendered by the insolvent to his creditors; and that, at their own cost, they have freed the said property from the fraudulent and simulated claim set up to it by a third person, and having thus made it available, they have the legal right to appropriate it to the satisfaction of their claim.

That Ingram having fraudulently attempted to screen this property from his creditors, it is legally incompetent for him to take any steps, in relation to the property seized, to affect their rights.

What these rights are it is not necessary for us to decide, and being satisfied, as we are, that they can only be determined contradictorily with the mass of the insolvent's creditors, before the court seized of the *concurso*, as the whole proceedings in the suit pending originally in

the Fourth District Court were, by the judgment thereby rendered on the 20th February, 1861, properly ordered to be cumulated with the insolvent proceeding in the Fifth District Court. See the case of *Fabre* v. *McRea,,* 14 Al. 648.

We are clearly of opinion that, however irregular the proceedings in insolvency may have been, and however fraudulently the debtor may have acted, the plaintiffs could not, on that account, disregard the behests of the decree of the court, which stayed all judicial proceedings against the insolvent and his property. They were parties to the proceedings, and were bound to respect them. *Armstrong* v. *Mooney,* 167, vol. 1 Rob.; *Taylor et al.* v. *Their Creditors,* 9 Rob. 376.

No objection seems to have been made to the appearance of Ingram, in the rules taken by him on the plaintiff, on the 12th and 21st February, 1861. It should have been made in the District Court by way of exception, if relied on, and all opposition to the legality or validity of the insolvent's proceedings, on account of fraud by the debtor, should have been urged in due time, in the manner required by law. See ?? 22 *et seq.,* p. 255, Revised Statutes. It would have been too late, after the legal delay, even if the fraud had been discovered after its expiration. *Mathews* v. *His Creditors,* 11 Al. 36.

Any informality in the proceedings, when questioned, must be by direct action. No creditor will be permitted to disregard and treat as an absolute nullity a judgment accepting a surrender made by his debtor, and granting a stay of proceedings. *W. A. Hayney* v. *John Healey,* 12 Al., 424.

The acceptance for the creditors by the court of the ceded estate, vests in them all the rights and property of the insolvent, whether placed on the schedule or not; and the syndic may sue to recover them. *Dwight, syndic,* v. *Simon et al.,* 4 An. p. 490; and *Dwight* v. *Smith, tutor,* p. 33, 9 Rob. But any creditor may show, provided it be contradictorily with the mass of the creditors, or their legal representative, that any particular object or fund is not embraced in the surrendered estate, but is subject exclusively to his individual claim. And this is the remedy of the plaintiffs, if any they have. See *Marsh* v. *Marsh et al.* 9 Rob. 47; C. P. 165, ? 3.

There is no error in the judgment of the lower court, and it is therefore ordered that the same be affirmed; the costs of appeal to be paid by the plaintiffs and appellants.