MISSISSIPPI MILLS Co. *v.* RANLETT and others.[1]

*(Circuit Court, E. D. Louisiana.* December, 1883.)

INSOLVENT LAWS OF LOUISIANA.
    The insolvent laws of Louisiana do not, by their declatory force solely, without any other investiture of title, the possession remaining in the debtor, remove the property of the debtor beyond the reach of a creditor who is a resident of another state, and who proceeds in the circuit court.
    *Ogden* v. *Saunders,* 12 Wheat. 213, followed.
    *Bank of Tennessee* v. *Horn,* 17 How. 159, distinguished.

On Rule to Dissolve Attachment.

*E. H. Farrar,* for plaintiff.

The court is asked to let go its jurisdiction over and its possession of the defendant's property, and to surrender the same to the state court and its appointed officer, to be there and by him administered under the state insolvent laws. Neither the state court nor its officer, the syndic, ever had any *actual* custody of the property. It was seized by the marshal in the hands of the defendants.

It is contended by the syndic that the cession made by the debtor and accepted by the state court *ipso facto* vested the creditors and the court with the title and the *constructive* possession of the property, so as to place it from that moment *in gremio legis,* and beyond the jurisdiction and control of this court.

The plaintiff contends—

(1) That the insolvent laws of Louisiana are not operative against the plaintiff, who is a citizen of another state, either in whole or in part; in other words, that those laws are to be considered as *not written,* either in a state or in a federal court. The syndic admits that they are inoperative *in part,* but not as a whole. For instance, he admits that they are powerless to stay proceedings in this court. He admits that a discharge of the debtor is inoperative here. But he contends that in one respect they *are operative,* and that one respect is that they have the effect *proprio vigore* to transfer to the state tribunals *sole* jurisdiction over the property of the insolvent, with the *sole* power to sell and distribute the same among his creditors.

The authorities repudiate specifically such a distinction. 5 Gill, 426; 4 Gill & J. 509; 2 Md. 457; 5 Md. 1; *Poe* v. *Suck,* quoted by the

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

supreme court of the United States in 1 Wall. 234; Judge Taney's opinion, 8 Gill. 499; 1 Wall. 234; 4 Wall. 409; 5 La. Ann. 271; 10 La. Ann. 145; 14 La. Ann. 261; 1 Bald. 301; 14 Pet. 67; 5 Blatchf. 279; 3 N. Y. 500. The effect of such a construction of the law would be to *compel* foreign creditors to subject themselves *voluntarily* to the jurisdiction of the state courts, and thus be bound by the insolvent's discharge. The state courts would thus hold all the insolvent's property in constructive possession and say to the foreign creditors: "Come in and take your dividend and *have your debt discharged* or get nothing."

(2) If the insolvent laws, *qua* laws, are inoperative in all respects as against foreign creditors, this case presents nothing but a question of the conflict of jurisdiction between two tribunals of concurrent jurisdiction, each having power to bind the goods of the defendant by its process. The rule in such cases is that *where the parties are not the same, nor the cause of action the same in both counts, i. e.,* to the extent of constituting *lis pendens,* that court holds the property which first obtained physical custody of it. In other words, in such cases there is no such thing as a constructive possession of property which is capable of actual possession—of *physical prehension.* The term *in gremio legis* is then, and under such circumstances, equivalent to *in manu ministres curiæ.* *Payne* v. *Drewe,* 4 East, 523; *Taylor* v. *Carryl,* 20 How. 594; *Freeman* v. *Howe,* 24 How. 450; *Wilmer* v. *Atlantic, etc., Air-line R. R.* 2 Woods, 409, opinion of Judges Bradley and Erskine.

It is clear that this court will not surrender its possession of and jurisdiction over *the property of the defendant* to a syndic, or officer of a state court, who had no legal existence when the jurisdiction of this court attached. That the property seized *belongs to the defendant,* notwithstanding the cession, is incontestable. The Code so declares in the most emphatic terms. Articles 2171, 2178, 2180, 2182. These articles of the Code, and the apparently conflicting section of the *subordinate* Revised Statutes, which declares that the cession "fully vests the property in the creditors," have been interpreted authoritatively. *Smalley* v. *Creditors,* 3 La. Ann. 387; *Nouvet* v. *Bollinger,* 15 La. Ann. 293. The contrary decision—the mere *dictum* of Judge Porter, unbacked by the quotation of authority—in *Schroeder's Syndics* v. *Nicholson,* 2 La. 354, is directly in the teeth of the law. The decision of *Bank of Tenn.* v. *Horn,* 17 How. 517, is equally without foundation. The authority of that case is further weakened by the fact that the seizure was made after the appointment and confirmation of the syndic, and after his actual custody of the property had begun.

The case of *Crapo* v. *Kelly,* 16 Wall. 610, does not apply to this case, because the assignment made by the court under the Massachusetts insolvent law transferred the *absolute title* of the property to the assignee, and also operated as a tradition and delivery of the property to such assignee. Under the law of Louisiana the *cessio bonorum*

leaves the title in the insolvent, and simply transfers to the creditors a right to administer and sell the property ceded under the orders of this court; and it is admitted that if, under the insolvent law of Louisiana, the *cessio bonorum* divested the title of the insolvent, vested such title *ipso facto* in the syndic, and operated a tradition and delivery of the property into the possession of such officer, then there would be an end of their attachment. But, inasmuch as such *cessio bonorum* is simply equivalent to an application to appoint a receiver to administer the property of the insolvent under the orders of the court for the benefit of his creditors,—the absolute title remaining all the time in the insolvent, coupled with the express right to terminate the whole proceeding at any time by coming forward and paying the debts and costs of administration,—this court's rights to lay its hands on the property of the debtor cannot be ousted, unless by the previous actual possession of such property by a state court through its duly-appointed officer.

*Thomas L. Bayne* and *George Denegre,* for provisional syndic.

The surrender made by the insolvents under the laws of the state of Louisiana, and the acceptance of the same by the court under a judgment duly signed, vested the property in the creditors, and gave to the state court and the creditors complete control of said assets, and they were not subject to seizure by process from any other court, state or federal. Such is the language of the law:

Rev. St. § 1791. *"From and after such cession and acceptance all the property of the insolvent debtor mentioned in the schedule shall be fully vested in his creditors."*

No other conveyance is ever made by the insolvents than that which is made at the time of the cession and acceptance as above.

The decisions of the supreme court of the state of Louisiana are uniform in declaring that all of the property of the insolvents passes to the creditors for the payment of their debts, at the moment of the cession and acceptance by the court, by mere operation of the law, *proprio vigore. Schroeder's Syndics* v. *Nicholson,* 2 La. 350. "By the laws of Louisiana, when an insolvent debtor makes a cession of his goods and they accept it, there is a transfer of his property,—it ceases to be his and becomes theirs;" or, as stated in *Orr* v. *Lisso,* 33 La. Ann. 478, "the final surrender of the property and the regular acceptance of the cession vested the title in the creditors." This is reiterated in all of the intervening cases. 4 La. 83; 7 La. 62; 12 La. Ann. 182; 4 La. Ann. 493; 19 La. Ann. 497; 23 La. Ann. 478; 6 La. Ann. 391.

The acceptance of the cession by the judge is "a judgment which can only be set aside by an action of nullity." *Sterling* v. *Sterling,* 34 La. Ann. 1029; 14 La. Ann. 424; 17 La. Ann. 88; 7 How. 624; 16 N. B. R. 303.

The law of Louisiana thus providing for the cession of the property by insolvents to all of their creditors, has been declared by the

supreme court of the United States to be constitutional, and this law, and its interpretation by the state courts, is declared to be a rule of property, effectual against all parties and in every forum. *Bank of Tennessee* v. *Horn*, 17 How. 159. And in this case it is said "that the surrender in the Second district court of New Orleans divested Conrey of all his rights of property and vested these in the creditors; * * * the right and title had, by operation of the law of the state, vested in the creditors." In *Crapo* v. *Kelly*, 16 Wall. 610, this is declared to be the effect of the insolvent law of Massachusetts, and Mr. Justice BRADLEY, who dissents on the ground that the property referred to was not within the limits of the state, says, (page 643:)

"In the case now decided the force and effect of 'the judicial assignment would have been regarded as conclusive in Massachusetts, had the ship, the subject of it, returned there, and become subjected to its local jurisdiction. * * * I do not deny that, if the property had been within Massachusetts jurisdiction when the assignment passed, the property would have been *ipso facto* transferred to the assignee by the laws of Massachusetts *proprio vigore*, and, being actually transferred and vested, would have been respected the world over." *Yonley* v. *Lavender*, 21 Wall. 279; 14 How. 34, 394; 8 How. 107; 3 Pet. 303; 10 Wheat. 165; 5 How. 72; 18 How, 502, 507; 2 Wall. 216; 91 U. S. 497; 3 Woods, 720; 93 U. S. 207; *Levi* v. *Columbia Ins. Co.* 1 FED. REP. 209; *Torrens* v. *Hammond*, 10 FED. REP. 900.

Under the state insolvent laws all writs of attachment are dissolved by the cession made by the debtor. Hennen, Dig. *verbo*, "Attachment, XI." p. 148, No. 1; 12 Martin, 32; 7 La. Ann. 39; 3 Rob. 457; 6 La. Ann. 444. Section 933 of the Revised Statutes declares:

"An attachment of property upon process instituted in any court of the United States to satisfy such judgment as may be recovered by the plaintiff thereon, except in the cases mentioned in the preceding nine sections, shall be dissolved when any contingency occurs by which, according to the law of the state where said court is held, such attachment would be dissolved in the court of said state." *Mather* v. *Nesbit*, 13 FED. REP. 872.

The cession was made by the insolvents and accepted by the court on the twenty-seventh of November; the attachment issued and seizure was made next day. The property had vested in the creditors and was not subject to seizure, and possession should be given to the syndic, their legal representative, and the attachment should be dissolved, as provided by section 933 of the Revised Statutes. The attachment issued by virtue of a state law, and falls under the above section of the law of the United States.

BILLINGS, J. The facts necessary to be considered are these: Messrs. Ranlett & Co., the defendants, had made a *cessio bonorum* under the insolvent law of the state of Louisiana, which had been accepted by the court before which the proceeding was pending, but no syndic had been appointed and no possession taken in behalf of the creditors. At this stage of the proceeding the plaintiff, who is a citizen of the state of Mississippi, sued out a writ of attachment in the circuit court of the United States in this state, and under his writ the marshal seized the property, the same being in the possession of

the defendants. The matter comes up on a motion of the syndic to release the seizure, on the ground that, inasmuch as the cession had been accepted by the court, according to the provisions of the insolvent law of the state, the property had vested in the creditors. Those provisions are as follows: "From and after such cession and acceptance all the property of the insolvent debtor mentioned in the schedule shall fully vest in his creditors." Rev. St. La. § 1791. So far as actual possession affects the question, the facts are with the plaintiff, for the marshal found the property in the possession of the defendant, seized it and holds it. The case is, therefore, free from any embarrassment arising from any possible disputed possession between the officers of this court and the court in which the insolvent case is pending. It is to be further observed that the law of the state of Louisiana, exclusive of the insolvent law of the state, requires tradition or delivery of personal property in order to transfer title. So that the sole point to be decided is whether the insolvent law, in and of itself, without any other investiture of title, the possession remaining in the debtor, removes the property beyond the reach of a creditor who is a citizen of another state. If that law operates upon such a creditor, the property, by the court's mere acceptance of the cession, was completely vested, though no possession had been taken, and must be surrendered to the syndic now appointed, to be administered under the insolvent law; if, on the other hand, that law is not operative upon such a creditor, there is nothing to prevent, and it becomes a manifest duty that this court should hold the property seized, and subject it to the payment of the debt of the attaching creditor.

The cases upon the general subject are numerous, but for the most part they deal with questions remote from the one before the court. The solution of this question stands with but little advance since the decision of *Ogden* v. *Saunders*, 12 Wheat. 213, which as late as *Baldwin* v. *Hale*, 1 Wall. 223, after an elaborate discussion, was, so far as relates to this matter, reiterated without qualification. The principle stated in both these cases, and in the last recognized as unqualified and unquestioned law, is: "When, in the exercise of their power to enact insolvent laws, states pass beyond their own limits and the rights of their own citizens, and act upon the rights of citizens of other states, there arises a conflict of sovereign power and a collision with the judicial powers granted to the United States, which render the exercise of such a power incompatible with the rights of other states and with the constitution of the United States." I am unable to perceive how there should be doubt or hesitation in deducing the law of this case from the principle thus enunciated and adhered to. If any attempt on the part of a state "to act upon the rights of a foreign citizen be so opposed to the sovereign and the judicial powers of the United States as to be incompatible with the rights of other states and with the constitution of the United States,"

then it must follow that, so long as the insolvent court relies exclusively upon the words of the insolvent law, at any stage of its procedure, short of actual, physical possession, or such a state of facts as by the general law of the state are tantamount to physical possession, as against the process of the United States court, issued at the instance of a foreign creditor, the title of the syndic must be nugatory.

Mr. Justice WOODBURY, in *Towne* v. *Smith*, 1 Wood. & M. 136, with reference to this very question, says: "The actual seizure of the property of the bankrupt in another government or country, before his assignees take possession of it, creates a lien upon it in favor of a foreign creditor, which will be sustained;" and again upon the same page, says: The circuit court of the United States, sitting in Massachusetts, "is as different a tribunal from those belonging to Massachusetts alone as the court of any other state." Nor do we obtain any qualification of this rigid doctrine from the federal statute, that the rules of property in the several states control the courts of the United States sitting therein, for that statute contains an exception which removes this whole question from its dominion. That statute is as follows: "The laws of the several states, except when the *constitution, treaties, or statutes of the United States otherwise require* or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States where they apply." Rev. St. § 721. Indeed, the statute, by its exception, declares that all state laws—be they insolvent laws, or laws prescribing rules of property, or of any other character—cease to be binding upon the federal courts whenever the constitution of the United States otherwise requires or provides.

The leading cases have arisen where only the validity of the debtor's discharge was involved. But the conclusion that until the state insolvent court has possession, its proceedings cannot affect the non-resident creditor, follows as conclusively with respect to exemption from process, or respite, or stay, or any intermediate action. In *Haydel* v. *Girod*, 10 Pet. 283, where the plaintiff, a resident creditor, had not been notified, and a respite and stay had been granted and were pleaded, the court say: "The plaintiff was in no sense made a party to the proceedings, and, consequently, his rights are in no respect affected by them." A *fortiori* must this be true where, as here, with reference to a party, the court had no authority to decree or proceed; for in *Gilman* v. *Lockwood*, 4 Wall. 411, the court say, "unless in cases where a citizen of another state voluntarily becomes a party to the proceedings, the state tribunal has no jurisdiction of the case."

Many cases have been cited by the counsel for the defendant, but they cannot avail to shake the settled law as thus explicitly declared by the supreme tribunal of the land.

There are numerous cases where the settlement of the estates of insolvent deceased persons has, by the same tribunal, been declared

to be exclusively vested in the appropriate state courts. It seems to me this large class of cases only affirm what is the universal law, and necessarily so, that the estates of the dead must be settled by the local mortuary courts, and that this is equally true whether they be solvent or insolvent. The jurisdiction in these cases springs not from the insolvency, but from the death, and the law which regulates is not an insolvent law, but a law controlling the administration of successions.

The case of *Bank of Tennessee* v. *Horn*, 17 How. 159, I have carefully considered. The point presented and decided seems to have been that a misdescription of real estate in the schedule of the insolvent debtor did not prevent its passing to the creditors by the cession. The contest was between a purchaser from the syndic under a sale ordered by the court of insolvency and those claiming title by a purchase under a judgment rendered in the United States circuit court after the cession. When we observe that the chief justice in giving the opinion of the court says, "the validity of the insolvent law of Louisiana has been fully recognized in the case of *Peale* v. *Phipps*, 14 How. 368," and further, that that case is placed upon the ground (page 374) that "while the property remained in the *custody and possession* of one court no other court had the right to interfere with it," it seems that it should be inferred that in the case of *Bank* v. *Horn* the syndic had possession at the time of the rendition of the judgment in the circuit court, and prior to any attempt to seize under it.

In the case presented here the plaintiff is in possession, and both as respects title and possession his right is absolute but for a right which, if it exists at all, comes from the inherent force of a state insolvent law, which, unaccompanied by possession, is, as to this plaintiff, like an extraterritorial bankrupt or insolvent law, and according to the summary of authorities in *Booth* v. *Clark*, 17 How. 322, (decided at the same term with the case of *Horn* v. *Bank, supra*,) gives to the foreign assignee no title as against local creditors who attach. The constitution of the United States operates within as well as without the state which enacts insolvent laws. No state laws in conflict with it can be rules of property. The doctrine of comity between the federal and state courts has been constantly extending in recognition and clear and rigid enforcement; but the rules of law as expounded in *Ogden* v. *Saunders, supra*, are, as it seems to me, unchanged. In accordance with that case, in this forum at least, the possession of a foreign citizen under an atttachment must prevail against the syndic who claims merely by the declaratory force of a state insolvent law. A mere declaration in a statute, which is by the settled adjudications inoperative against a party domiciled as is the plaintiff, cannot oust this court of administration of the property, which is, consistently with all the rules of judicial comity, in its possession.

The rule must be denied.