## GEILINGER *v.* PHILIPPI.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 367. Submitted January 8, 1890. — Decided February 3, 1890.

An insolvent debtor of Louisiana, under the insolvent laws of that State, surrendered his property for the benefit of his creditors, the surrender was duly accepted, and the creditors elected a syndic who qualified and was commissioned as such. On his schedules the debtor returned the house in which he resided and the furniture therein as the property of his wife to which he had no claim. The syndic did not take possession of it and laid no claim to it until a foreign creditor, who was not a party to the proceedings in insolvency, and who had obtained a judgment against the debtor in the Circuit Court of the United States after the insolvency, levied upon the house as the property of the debtor. The syndic then filed in the creditor's suit a third opposition, setting up claim to the property, and praying that the seizure under the execution be set aside, and that the marshal be enjoined from levying upon it. A decree in accordance with the prayer was entered, conditioned upon the syndic's paying cost of seizure and filing in the Circuit Court an order from the state court to the syndic to take possession of the property, and to administer it as part of the insolvent's estate; *Held*, that there was no error in this decree, but that it was eminently judicious and proper.

This was a suit by way of third opposition, brought in the Circuit Court of the United States for the Eastern District of Louisiana, by Cæsar Philippi, syndic of the creditors of Gilbert H. Green individually, and as a member of the late commercial firm and partnership of Gilbert H. Green & Co., of New Orleans, and also of Green, Stewart & Co., of Liverpool, England, in the suits of *Bank in Winterthur* v. *Gilbert H. Green*, and *Geilinger & Blum* v. *Gilbert H. Green*, on the docket of said Circuit Court. After the answers were filed, the two causes were consolidated and tried by the court as one case.

The submission, findings of fact and judgment were as follows:

" This cause came on this day for trial, and the parties having filed a stipulation in writing waiving the intervention of a jury and submitting the cause to the court on the issues of law and of fact, with the request that the court do make a special finding of the facts —

" Whereupon the court makes the following finding of fact:

" Geilinger & Blum, a commercial firm, domiciled and doing business at Winterthur, in Switzerland, filed their action against the defendant, Gilbert H. Green, on November 25th, 1886, and on the 31st day of January, 1887, recovered a verdict and judgment in this court against Gilbert H. Green for the sum of ten thousand five hundred and nine $\frac{68}{100}$ dollars, with interest. The Bank in Winterthur, a corporation organized under the laws of the Canton of Zurich, in the Swiss Republic, filed its action against Gilbert H. Green on the 25th day of November, 1886, and on the 31st day of January, 1887, recovered a verdict and judgment in this court against Gilbert H. Green for the sum of forty thousand three hundred and six $\frac{64}{100}$ dollars, with interest. On December 26th, 1886, Gilbert H. Green made a surrender under the insolvent law of the State of Louisiana, individually and as a member of the commercial copartnership of Gilbert H. Green & Company, of New Orleans, Green, Stewart & Co., of Liverpool, England, in the form and manner set forth in the certified copy of the record of said insolvent proceedings, No. 19,734 of the docket of the Civil District Court, parish of Orleans, which said record is made part of the

finding of facts in this cause to show the character and contents of the proceedings had in said cause; that on or about the 20th of May, 1887, under writs of *alias fi. fa.* issued in the case of *Geilinger & Blum* v. *Gilbert H. Green* and in the case of the *Bank in Winterthur* v. *Gilbert H. Green,* the marshal of this court levied upon certain real estate described in the petition of Cæsar Philippi, syndic. This property was acquired by act before Theodore Guyol, notary public, of date May 19th, 1882, and said deed is hereto annexed and made part of this statement of facts to show the form, purport and contents thereof.

" At the time that this levy was made the said property was in possession of Gilbert H. Green and his wife and was their matrimonial domicile, and the said property had been continuously in possession of the said Green and wife from the date of the purchase thereof down to the date of the seizure thereof under writs of *fi. fa.* in these causes. Up to the time that this seizure was made no demand had been made upon Green and wife by Cæsar Philippi, syndic, for the said property, and no claim of title or possession had been set up by the said Philippi, syndic, for the said property.

" And thereupon the court, upon these facts, finds the issues of law in favor of the said Cæsar Philippi, syndic, and it is thereupon ordered, adjudged and decreed that the seizure of the said property above described under the *alias* writ of *fi. fa.* issued in these causes, dated May 20th, 1887, be set aside and the property released by the marshal, and that R. B. Pleasants, United States marshal for the Eastern District of Louisiana, be restrained and enjoined from proceeding to advertise and sell the property herein claimed, upon this condition, however, that said Philippi shall pay all the costs which have been incurred in the making of said seizure, and shall also present and file in this cause an order from the Civil District Court for the parish of Orleans, division E, authorizing and directing him to take possession of said property from the said Green and wife, and to administer the same as part of the insolvent estate of the said Gilbert H. Green committed to the charge of the said court and the said syndic.

" It is further ordered, adjudged and decreed that Geilinger & Blum and the bank in Winterthur be condemned jointly to pay the costs of this suit.

" Judgment rendered June 13, 1887. Judgment signed June 17, 1887."

Annexed to the findings was a certified copy of the insolvency proceedings and of the deed to Mrs. Green.

The schedule of his assets showed this entry therein by Green :

" The house in which I reside on St. Charles Street, and the furniture therein, is the individual property of my wife, and I have no claim thereto."

From the *procès-verbal* of the meeting of the creditors, it appeared that Philippi was unanimously elected syndic, and letters issued to him accordingly; that nineteen out of twenty-seven local creditors of Green & Co. appeared and took part in the proceedings, accepted the surrender of property made by the insolvent, and voted to grant him a full discharge ; and that the court appointed an attorney to represent the absent creditors, who declared that he had taken full cognizance of the meeting.

The deed was dated May 19, 1882, and purported to grant, bargain, sell, assign, convey, transfer and deliver with full warranty to Mrs. Green, wife of Gilbert H. Green, " by whom she is herein assisted and authorized," the property therein described. The notes for the deferred payments were signed by her, but it did not appear in the deed that the purchase price was paid for with the paraphernal or separate estate of Mrs. Green.

Upon the trial a bill of exceptions was taken, which stated that Geilinger & Blum and the bank in Winterthur " placed Gilbert H. Green upon the witness stand and offered to prove by the said Gilbert H. Green that in making the surrender of his property, as set forth in the record No. 19,734, division E, Civil District Court, referred to in the statement of facts in this cause, he did not intend to include in that surrender the property seized in this cause, for the reason that he was informed and advised by his counsel that the said property was

the property of his wife and was not liable for his debts or covered by the said surrender; to the introduction of which testimony the said Cæsar Philippi, syndic, then and there objected, on the ground that the said testimony was irrelevant and that Green's intention in making his surrender would not affect the issue in this cause; which objections the court sustained, and refused to allow said testimony to be adduced. To which ruling Geilinger & Blum and the bank in Winterthur then and there excepted." To the judgment rendered as above, the pending writ of error was sued out from this court.

The errors assigned were:

1. That the court erred in refusing plaintiffs in error the right to prove the facts set forth in the bill of exceptions herein filed.

2. That the court erred in concluding as a matter of law that Gilbert H. Green had surrendered the property seized in this cause under and by virtue of the insolvent proceedings No. 19,734, of the Civil District Court.

3. That the court erred in ordering the release of the property herein sued for.

*Mr. Edgar H. Farrar, Mr. B. F. Jonas,* and *Mr. Ernest B. Kruttschnitt* for plaintiffs in error.

The point in this case is a very narrow one. Was the seized St. Charles Street property either actively or constructively *in gremio legis,* so as to exclude the Circuit Court of the United States from levying on it?

We concede that Green ought to have surrendered the St. Charles Street property; because, under the law of Louisiana, it was community property and liable for his debts. The purchase of the property in the name of the wife did not make it her property.

We concede further that if he had casually omitted it from his schedules it would have passed under the control of the syndic of the creditors, and under the doctrine of *Bank of Tennessee* v. *Horn,* 17 How. 517, would not have been liable to seizure.

We concede further that if he had fraudulently omitted this property from his schedule, and put the title in the name of his wife before his cession, an action would lie by his syndic to recover it.

But we contend that, as Green expressly declared, under oath, in his schedule that the property was not his, but his wife's, and as he not only did not actually surrender it, but did not intend that his insolvent proceedings should have such an effect, and, as his surrender, *in the form and manner as made,* was accepted by the court and by the controlling majority of his local creditors, and as the syndic made no pretence of claim of title or possession until after the seizure by the marshal, the property remaining thus in Green's actual possession was not *in gremio legis* so as to exclude his foreign creditors, who were in no manner bound by his insolvent proceedings, from levying their writs upon it.

1. Under the *cessio bonorum* of the civil law, whether voluntary or forced, the legal title to the property ceded by the insolvent remains in him, and does not pass to the creditors or to the syndic. *Rivas* v. *Hunstock,* 2 Rob. La. 187 ; *Smalley* v. *His Creditors,* 3 La. Ann. 386; *Walling* v. *Morefield,* 33 La. Ann. 1174, 1177; *Jaquet* v. *His Creditors,* 38 La. Ann. 863.

2. The law of Louisiana requires the application of an insolvent to make surrender of his property to be laid before the court to which the application is made, and the acceptance of the surrender, in the form and manner as made, is submitted to the judicial discretion of the judge. *State ex rel. Boyd* v. *Green,* 34 La. Ann. 1020.

3. The insolvent proceedings in the state court, and the insolvent laws of Louisiana have no extra-territorial effect, and do not affect or control non-resident creditors, unless they voluntarily make themselves parties to the proceedings. *Ogden* v. *Saunders,* 12 Wheat. 213 ; *Baldwin* v. *Hale,* 1 Wall. 223; *Gilman* v. *Lockwood,* 4 Wall. 411; *Towne* v. *Smith,* 1 Woodb. & Min. 115, 136 ; *Poe* v. *Duck,* 5 Maryland, 1. We respectfully submit that, under the circumstances which are found as facts in this case, the courts of the United States will not surrender their jurisdiction of the property, and allow it to be

distributed among local creditors, to the exclusion of all foreign creditors who are unwilling to submit themselves to the state insolvent law.

The case thus presents nothing but a question of a conflict of jurisdiction between two tribunals of concurrent jurisdiction, each having power to bind the goods of the defendant by its process. The rule in such cases is that where *the parties are not the same, nor the cause of action the same in both courts,* that court holds the property which first obtained physical custody of it. In other words, in such cases there is no such thing as constructive possession of property which is capable of actual possession — of physical prehension. *Payne* v. *Drewe,* 4 East, 523; *Taylor* v. *Carryl,* 20 How. 583, 594; *Freeman* v. *Howe,* 24 How. 450; *Wilmer* v. *Atlantic &c. Air Line Railroad,* 2 Woods, 409.

4. All of Green's local creditors who appeared at the creditors' meeting, who voted to accept his surrender and to grant him a discharge, are estopped from saying that the St. Charles Street property is part of Green's estate.

The local creditors who did not so appear might, by proper proceeding, have compelled the syndic to institute an action to recover this property; and this is the reason why the judge imposed upon the syndic, as a condition of the release of the seizure made by the marshal, that he should pay all the costs which have been incurred in the making of the seizure, and that he should also present and file in this cause an order from the Civil District Court, authorizing and directing him to take possession of said property from Green and wife, and to administer the same as part of the insolvent estate of Green committed to the charge of the court and the syndic.

The necessity the judge found himself under of putting this proviso in the judgment, ought to have furnished him a conclusive reason for rejecting the syndic's claim.

*Mr. Thomas J. Semmes* and *Mr. Alfred Goldthwaite* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case as above, delivered the opinion of the court.

It is conceded by counsel for the plaintiffs in error that the St. Charles Street property was, under the law of Louisiana, community property, and liable for Green's debts, and should have been surrendered to the syndic; that if Green had casually omitted it from his schedules it would have passed under the control of the syndic; and that if he had fraudulently omitted the property from his schedules and put the title in the name of his wife before the insolvency proceedings, an action would lie by the syndic to recover it. But it is contended that as Green declared the property to be his wife's, and did not intend it to go under his insolvent proceedings, and as his surrender in the form and manner as made was accepted, and the syndic set up no claim of title or possession until after the seizure by the marshal, "the property remaining thus in Green's actual possession was not *in gremio legis* so as to exclude his foreign creditors, who were in no manner bound, by his insolvent proceedings, from levying their writs upon it."

The Louisiana Code contains these articles (Rev. Civil Code. La. 1875, 473):

"Art. 2175 [2171]. The surrender does not give the property to the creditors; it only gives them the right of selling it for their benefit and receiving the income of it, till sold.

"Art. 2178 [2174]. As the debtor preserves his ownership of the property surrendered, he may divest the creditors of their possession of the same, at any time before they have sold it, by paying the amount of his debts, with the expenses attending the cession."

Sections 1781 to 1822, inclusive, of the Revised Statutes of Louisiana constitute a system of insolvent laws. Rev. Stat. La. 1870, 353 *et seq.*

Section 1791 reads: "From and after such cession and acceptance, all the property of the insolvent debtor mentioned in the schedule, shall be fully vested in his creditors; and the syndic shall take possession of, and be entitled to claim and recover, all the property, and to administer and sell the same according to law."

These provisions have formed part of the laws of Louisiana for many years, and the Supreme Court of that State has

repeatedly held in respect to them, that when a *cessio bonorum* has been accepted by the court and the creditors, and a syndic has been appointed and qualified, all the property and rights of property of the insolvent are vested in his creditors, represented by the syndic as their trustee, and pass to the creditors by the cession, whether included in his schedule or not. *Dwight* v. *Simon*, 4 La. Ann. 490; *Muse* v. *Yarborough*, 11 La. 521; *West* v. *His Creditors*, 8 Rob. La. 123; *Dwight* v. *Smith*, 9 Rob. La. 32. These cases sustain and are therefore cited to the proposition by Chief Justice Taney, delivering the opinion of this court in *Bank of Tennessee* v. *Horn*, 17 How. 157, 160. The rule relates to possession and disposition, and it has been frequently decided that the surrender of the insolvent does not divest him of the title to the property surrendered, though it strips him of the power to control, alienate or dispose of the same during the administration of his estate, and so vests it in the creditors or in the syndic for them, that it is no longer liable to seizure, attachment or execution, but is held to be administered and disposed of according to law for the benefit of the creditors. *Rivas* v. *Hunstock*, 2 Rob. La. 187; *Jaquet* v. *His Creditors*, 38 La. Ann. 863; *Walling's Heirs* v. *Morefield*, 33 La. Ann. 1174, 1177; *Nimick* v. *Ingram*, 17 La. Ann. 85.

It is therefore immaterial that title may not vest absolutely in the syndic or creditors. It is enough that the surrender operates as a transfer for the specific purpose of the disposal of the property and the distribution of the proceeds in concurso among the creditors, and is protected accordingly. *Laforest* v. *His Creditors*, 18 La. Ann. 292; *West* v. *His Creditors*, *ubi supra*.

In *Nimick* v. *Ingram*, 17 La. Ann. 85, Nimick & Co., judgment creditors of Ingram, issued execution against him from the Fourth District Court of New Orleans, where they had recovered their judgment, and caused property to be seized thereunder after Ingram had gone into insolvency and made a surrender in the Fifth District Court. The proceedings in Nimick & Co.'s suit were transferred to the Fifth District Court and cumulated with the insolvent proceedings. Thereupon, Ingram took out of the latter court a rule on Nimick &

Co. to show cause why all further action under the writ of *fi. fa.* should not be stayed and set aside, which rule was made absolute; and from that order an appeal was taken to the Supreme Court of Louisiana. There Nimick & Co. urged that by their diligence they had discovered the property seized by them, and that Ingram having fraudulently attempted to screen the property, it was legally incompetent for him to take any steps in relation to it to affect their rights; but the Supreme Court said:

" What these rights are it is not necessary for us to decide, . . . being satisfied, as we are, that they can only be determined contradictorily with the mass of the insolvent's creditors, before the court seized of the *concurso,* as the whole proceedings in the suit pending originally in the Fourth District Court were . . . properly ordered to be cumulated with the insolvent proceedings in the Fifth District Court. . . .

" Any informality in the proceedings, when questioned, must be by direct action. No creditor will be permitted to disregard and treat as an absolute nullity a judgment accepting a surrender made by his debtor, and granting a stay of proceedings.

" The acceptance for the creditors by the court of the ceded estate, vests in them all the rights and property of the insolvent, whether placed on the schedule or not; and the syndic may sue to recover them.

" But any creditor may show, provided it be contradictorily with the mass of the creditors, or their legal representative, that any particular object or fund is not embraced in the surrendered estate, but is subject exclusively to his individual claim. And this is the remedy of the plaintiffs, if any they have."

*Nimick* v. *Ingram* is quoted from and approved in *Tua* v *Carriere,* 117 U. S. 201, 207.

In the case in hand, the order of the court in insolvency stayed all judicial proceedings against the insolvent and his property, and, by the acceptance of the cession, passed all the insolvent's assets to the syndic for the benefit of creditors; but its operation was not confined to the property specifically named, nor did the acceptance by the creditors have that effect.

If property be omitted by mistake or with fraudulent intention, it is the duty of the syndic to have the schedule amended so as to include it, and to take possession and administer upon it, *Chaffe* v. *Scheen*, 34 La. Ann. 686; and it is the duty of the creditors to bring it to his attention, that he may do so. The evidence offered by appellants that Green did not intend to include this property because advised by counsel that it was not liable for his debts was properly excluded, as his intention could not control the operation of the law, or defeat the rights of his creditors.

The property was named in the schedule as belonging to the wife individually and therefore not claimed by the debtor; but any creditor, by inquiry, could have ascertained the circumstances and been informed of its liability under the law. There is nothing to impugn the good faith of the syndic; and if there were, he could have been compelled to act and was liable to removal. Rev. Stats. La. § 1814. Nor was there any element of estoppel involved in the action of the creditors who signed the consents to Green's discharge. The surrender which they accepted covered all the insolvent's assets, and even if they were laboring under the erroneous belief that this particular property was not subject to their claims, they would be entitled, so far as appears from this record, to share in its proceeds when the mistake was discovered. No other creditor was misled to his injury by their action, and no adjudication foreclosed their rights.

And in addition to this, as Geilinger & Blum and the bank in Winterthur recovered their judgments after the insolvency proceedings were commenced and the surrender made by Green, if they wished to attack those proceedings they should have done so, as we have seen, "contradictorily with the mass of the insolvent's creditors, before the court seized of the *concurso*."

It is said, however, that insolvency proceedings and laws can have no extra-territorial effect, and do not affect or control non-resident creditors, unless they voluntarily make themselves parties to the proceedings.

And it is argued that as these were foreign creditors, who

had not made themselves such parties, and had sought relief through the United States Circuit Court, that placed them on different ground as to the property of an insolvent from that occupied by the creditors of his domicil. But so far as the property of an insolvent is concerned in the jurisdiction within which proceedings against him are taken, its destination is fixed (existing priorities being of course respected) by the laws of that jurisdiction. The insolvency decree is in the nature of an execution, and though it cannot by its own force attach assets in another State, it takes the assets within its own. And, while non-resident creditors are entitled to come in *pari passu* with domestic, if they do not do so they cannot participate in the distribution.

By the insolvency proceedings Green's assets were placed *in gremio legis*, and could not be seized by process from another court. *Peale* v. *Phipps*, 14 How. 368, 375 ; *Tua* v. *Carriere*, 117 U. S. 201, 208. What the rights of the appellants might be if they declined to prove their claims or intervene in the state court, upon the termination of the administration there, it is not necessary to consider. *Williams* v. *Benedict*, 8 How. 107, 112 ; *Union Bank* v. *Jolly's Administrators*, 18 How. 503 ; *Green's Administratrix* v. *Creighton*, 23 How. 90, 107. The conclusion that under the particular circumstances disclosed, this property formed part of the assets belonging to an administration pending when the writs of *fi. fa.* were issued, determines the invalidity of the seizure under them. *Rio Grande Railroad Company* v. *Gomila*, 132 U. S. 478.

The judgment of the Circuit Court released the property upon condition that the costs in the making of the seizure be paid by the syndic, and that he present and file an order from the State District Court authorizing and directing him to take possession of the property and administer the same as part of the insolvent estate of Green. This was an eminently judicious and proper order apparently effectual to secure the appropriation of the property to the claims to which it was subject, while these judgment creditors were absolved from the expense incurred in emphasizing the fact of its liability.

We see no error in the record and the judgment is therefore

*Affirmed.*