BARROW v. MILLIKEN.

(Circuit Court of Appeals, Fifth Circuit. May 5, 1896.)

No. 388.

PLEDGE OF SUGAR BOUNTIES.
There is nothing in the sugar bounty provision of the act of October 1, 1890, or in Rev. St. §§ 3477, 3737, to prevent the sugar planter from pledging the bounty to become payable on his crop, before his claims therefor have been presented and allowed, and a treasury warrant issued. Hobbs v. McLean, 6 Sup. Ct. 870, 117 U. S. 567, applied.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

E. H. Farrar, for appellant.

Thos. J. Semmes, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

McCORMICK, Circuit Judge. The controversy in this case is about certain bounty checks issued by the government of the United States to Cornelius J. Barrow, a sugar planter and licensed sugar producer in the parish of West Baton Rouge, under the act of October 1, 1890. These checks were forwarded from Washington to C. J. Barrow, at New Orleans, to the care of Richard Milliken. Milliken was Barrow's factor and commission merchant, who for some years past had been making advances to Barrow to cultivate his plantation. In March, 1892, Barrow executed a mortgage and pledge of his crop to Milliken, to cover certain past and certain future indebtedness, and in said act of mortgage stipulated as follows:

"And in order to secure more fully the full and punctual payment of the said note, with all interest, attorney's fees, costs, charges, and commissions herein stipulated, the said Cornelius J. Barrow does hereby recognize and acknowledge, in favor of the said mortgagee, his heirs and assigns, the lien and privilege accorded by law on any and all crop or crops of sugar and molasses, and other crops, of whatever nature or kind, which shall be or may be made on the said plantation for or during the year eighteen hundred and ninety-two,

and the proceeds of said crop or crops; and, in addition to the said lien and privilege, the said Cornelius J. Barrow does hereby pledge and pawn unto and in favor of the said mortgagee, his heirs and assigns, the entire crop to be made on the said plantation for and during the year 1892.  *  *  *  Now, to secure the faithful performance of each and all of the foregoing obligations, etc., the said mortgagor does by these presents further specially mortgage and hypothecate the hereinbefore described plantation, and all appurtenances thereof, unto and in favor of said mortgagee, and all holders of said note herein furnished, and does hereby transfer, assign, and pledge unto the said mortgagee any and all bounties which shall or may be allowed to said mortgagor by the government of the United States on the sugar made on said plantation during the present agricultural year 1892, hereby agreeing to deliver, properly assigned and indorsed, to said mortgagee, all and every certificate or other evidence of claim against the United States for such bounty, and any and all drafts or checks given for said bounty."

The date when Barrow qualified as licensed sugar producer for the year 1892 is not fixed, but, under the statute, he must have qualified prior to the 1st day of July, 1892. His claims for bounty were filed, allowed, and checks issued therefor, as follows: (1) Claim for $2,689.38, filed January 25, 1893; allowed February 16, 1893; draft forwarded, dated April 11, 1893. (2) Claim for $1,838.60, filed December 20, 1892; allowed January 24, 1893; draft forwarded, dated March 13, 1893. (3) Claim for $23.90. filed February 28, 1893; allowed March 30, 1893; draft forwarded, dated May 19, 1893. (4) Claim for $1,624.61, filed January 13, 1893; allowed January 27, 1893; draft forwarded, dated March 14, 1893.

On the 26th January, 1893, Cornelius J. Barrow made a surrender of his property to his creditors, which was that day accepted by the court of his domicile, in the parish of West Baton Rouge; and, on the 31st day of January, Alexander D. Barrow, the plaintiff herein, was appointed provisional syndic, and was subsequently, at a meeting of the creditors, appointed syndic. In his schedule of assets, C. J. Barrow did not place his bounty claims against the government. In August, 1893, the syndic brought a suit against C. J. Barrow for the bounty checks in question, and obtained a judgment against him, perpetually enjoining him from collecting the treasury drafts for bounty, and ordering him to surrender the drafts to his syndic as part of his assets, properly indorsed, to be by the syndic administered and distributed among Barrow's creditors according to law. Richard Milliken at that time held possession of the checks for account of Barrow, having obtained them, as appears by the above statement, after Barrow's insolvency, and after the appointment of the syndic. He was not made a party to this proceeding. In October, 1893, after all these proceedings had taken place, Barrow (syndic) filed an action at law in the circuit court of the United States against Milliken, who is an alien, to recover possession of the bounty checks which had been forwarded by the government to Barrow to Milliken's care, in New Orleans, setting up in this petition that he had obtained a judgment against Barrow for the checks, and that Milliken retained unlawful possession of them. Milliken answered that he held the checks lawfully, and was entitled thereto by virtue of the assignment made to him by the insolvent Barrow, by notarial act dated March 14,

1892, containing the paragraphs above quoted, and that the only reason why the bounty checks had not been paid to him (Milliken) was that the insolvent agreed to indorse the checks, and had failed to carry out his contract; that he held Barrow's note for $15,000, mentioned in the act of 14th March, 1892; that the note was due and unpaid; and that he was entitled to collect the checks from the United States, and apply the proceeds to the payment of the note. Milliken, believing that his defense to the claim was an equitable defense, and not a legal one, and knowing that an equitable defense could not be set up in an action at law, filed a bill in equity, setting up the facts, and claiming that his assignment of the checks was an equitable one, which vested the checks in him as against the insolvent, as well as his creditors and the syndic, and asking an injunction against Barrow from prosecuting the suit at law, and praying a judgment declaring him to be the equitable owner of the bounty checks, and entitled to the possession thereof, as against Barrow and his syndic, and the creditors represented by the syndic. The counsel entered into a written stipulation that the two causes should be consolidated and tried as an equity cause, under the style of "Richard Milliken v. Alexander D. Barrow, Syndic"; and that the agreed statement of facts filed in the law case should be considered as if set up in an answer in the equity cause by Barrow, syndic, the answer replied to by the complainant, Milliken, the facts proven in due form of law, the testimony published, and the cause set for hearing on the issue as thus perfected; and that, upon final hearing, the court should render such decree as will finally dispose of the whole controversy. There was some controversy in the lower court relative to the imputation of payments, and as to how much was due for the advances and supplies of the year 1892; but this was settled by counsel, and it was agreed that Milliken, if entitled to anything, was entitled to be paid the sum of $5,268.03, with 8 per cent. on various amounts out of the proceeds of the checks, which amounted to $6,176.49. In this court no question is made by the appellant on the correctness of the amount of this decree if Milliken is entitled to be paid anything out of the checks in question. The court below rendered a judgment in favor of Milliken, declaring him to be the equitable owner of the checks to the extent stated, and the syndic has appealed to this court from this decree.

The errors assigned are: (1) The court erred in holding that C. J. Barrow could make any lawful or valid pledge of his claims on the United States for bounty before said claim has been presented and allowed, and a treasury warrant issued therefor. (2) The court erred in holding that the pledge of said claim, or the proceeds thereof, was valid, without possession of the thing pledged by the pledgee, or notice thereof to the government of the United States. (3) The court erred in holding that Richard Milliken, who got possession of the treasury warrants issued to C. J. Barrow, after C. J. Barrow had made a surrender of his property to his creditors, and after appellant had been appointed and qualified as syndic of his estate, could hold such warrants under a pretended pledge

made of the claim before Barrow became insolvent, as against appellant and the syndic of his estate.

To support his first assignment of error, the appellant relies on sections 3477 and 3737 of the Revised Statutes, and the cases of U. S. v. Gillis, 95 U. S. 407, and Spofford v. Kirk, 97 U. S. 484. As we view it, the case before us is within the reasoning and the authority of Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, in which case the sections of the statute are recited in full, and construed in the light of all the previous cases, by reasoning as clear and close as can be made, and in all its substance as applicable to Barrow's contract as it was to that of Peck. The argument that would distinguish the two is either highly technical, or makes in favor of the appellee. The policy of the government expressed in the statute of October 1, 1890, was to encourage the domestic production of sugar. It provided the rate per pound the government would pay all qualified producers of certain named sugars, not for the sugar, but as a premium on its production, which, added to its market value, would fix the value of the article to the producer. It thus became an essential and an important ingredient in his sugar crop. as much so, only with more certainty, as the price of the article in open market. It was then well known that the successful production of sugar from ribbon cane, as the same is done in Louisiana, required a large original outlay of actual money for the necessary plant, and a considerable continued outlay for current expenses. It was also common knowledge that in the cane-sugar growing districts the plant and the annual product were subject to privilege or mortgage to secure past, present, or future advances. In the state of the market that would follow the passage of the act, the premium to be paid by the government on domestic production would equal from one-third to one-half the value of the crop. There is nothing in the terms of the statute to discourage, much less forbid, the pledging of the crop to procure or aid in procuring advances of money necessary to plant, cultivate, harvest, and market it. There is nothing in the nature of the case to raise an implication that, in pledging such a future crop, only one-half or two-thirds of its value to the qualified producer could be bound by the pledge. The statement of the case, which we have adopted, almost literally, from the brief of counsel for the appellant, shows the justice and equity of the decree. Barrow's contract with Milliken was not opposed to the policy of the statute expressed in sections 3477 and 3737, as construed in Goodman v. Niblack, 102 U. S. 556. or in the numerous decisions cited in Hobbs v. McLean, supra, or in any of the subsequent cases, down to and including Ball v. Halsell, 16 Sup. Ct. 554, announced during the present term of the supreme court.

The decree of the circuit court is affirmed.