SUTHON v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. June 11, 1897.)

Nos. 591 and 592.

SUGAR BOUNTY—CONSTRUCTION OF STATUTE—PRODUCER OF SUGAR.

One who advanced money to sugar planters to enable them to produce a crop of sugar cane and manufacture sugar therefrom, taking as security a mortgage on the crop to be raised, and by contract having the sugar manufactured and sold in his name, with the agreement that the license under

the act of October 1, 1890, should be taken out in his name, and that he should receive the bounty provided by said act to be paid by the United States, is a producer of sugar, within the purview of the law, and entitled to recover the bounty on such sugar in an action against the government.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Edgar H. Farrer, for plaintiff in error.

J. Ward Gurley, Jr., for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

McCORMICK, Circuit Judge. Walter J. Suthon, plaintiff, is a sugar factor and commission merchant. John Scannell and James D. Capron were sugar planters and owners of plantations in St. Mary's parish, La., in the beginning of the year 1894. They were without funds to operate their plantations in that year, and they each induced the plaintiff to enter into a contract with each of them, respectively, to advance them money for the purpose of growing and manufacturing a crop of sugar on their respective plantations; and in order to secure the plaintiff, Suthon, for these advances, each granted a mortgage on his plantation, and the statutory pledge, under Act 66 of Louisiana (Acts 1874), on the crop to be produced during that year, and consented that the license for the bounty on the sugar to be produced that year on their respective plantations should be taken in the name of Suthon, and obligating themselves to keep, or cause to be kept, all proper books, certificates, etc., required to be kept by the bounty laws in the name of Suthon, and to make all reports required under the bounty law and internal revenue regulations. At the time these contracts were made the act of congress approved October 1, 1890, was in force, and the form of the several contracts was one well known to the business community; and it was the custom of established merchants making such advances to take out licenses on the plantations of their constituents, and this custom had been followed for several years under the operation of the bounty act, and was well known to the government officials, who had always paid the bounty to such merchants under such licenses. Suthon acted, in making his contracts, on the faith of these precedents established by the government in the interpretation of the bounty law. There was no concealment of the facts as to the ownership of the plantations described in Suthon's applications for licenses. The applications were made prior to July 1, 1894, in due form, to produce sugar at the sugar factory owned by John Scannell and James D. Capron, at the place, with the machinery, and by the methods described in the application, and the required bonds were given. The license was not granted, because the law was repealed on August 28, 1894, before the sugar-making season began. Suthon complied with his contracts with Scannell and Capron, and advanced the money which he engaged to advance, and the crop was made by means thereof. The sugar factories were conducted in the name of W. J. Suthon. Scannell and Capron made sworn re-

turns of the product of the factories, as managers thereof, as required by the internal revenue regulations. The sugar there produced. was marketed and shipped as the sugar of W. J. Suthon, and was sold as such in the New Orleans market. At the end of the season, Scannell and Capron remained indebted to Suthon in sums exceeding the amount that would have been due for bounty if it had been collected, and when collected this bounty is to be credited on the debt thus due to Suthon. When the act of March 2, 1895, was passed, Suthon presented to the internal revenue collector for Louisiana his claim for bounty allowed in that act, and the same was approved and forwarded to the commissioner of internal revenue at Washington for allowance and payment. His claim was rejected by the internal revenue department on the ground that he was not a producer of sugar, within the purview of the law. An appeal was taken from this decision to the secretary of the treasury, who affirmed the decision of the commissioner of internal revenue. Thereupon he filed these suits, seeking to recover against the United States amounts that he claimed would be due him under the act of March 2, 1895, as a sugar producer. The government met the plaintiff's petition with a peremptory plea that his petition set forth no cause of action, because it appeared from the allegations thereof that he was not a sugar producer, within the purview of the statutes of the United States. There is no question in the case as to the amount of sugar produced on the respective plantations, nor as to the amount of bounty to which the producer of it is entitled under the act of March 2, 1895. The only question raised is, within the meaning of these acts, was the plaintiff a producer of sugar?

The provisions of the act of October 1, 1890, granting a bounty to the producers of sugar, inaugurated a new policy in this country; and the questions arising in connection with its practical application were novel, and excited doubt in the minds of the most eminent lawyers as to their correct practical solution. To escape the embarrassment resulting from the provisions of law in reference to making transfers of claims against the government of the United States, the contracts in this case, and in numerous other like cases, provided that the plaintiff should make application for a license as a sugar producer on the plantations and at the factories of the other contracting parties, and that the operation of manufacturing and disposing of the sugar should be in his name, and under the management of persons representing him as his agents in relation thereto. The law of October 1, 1890, having been repealed before the licenses were in fact issued to plaintiff, no such licenses were issued to any one as a producer of sugar on the respective plantations for that year. It is not questioned that the owners of the respective plantations, or the plaintiff, under his contract with them, respectively, is the producer of the sugar produced on the plantations, and entitled to the benefit of the act of March 2, 1895. In the first case that came before us growing out of the provisions of the sugar bounty law, it was strenuously urged that the bounty was a matter of pure grace, and that before it was received it was not, and could not be, the subject of contract or lien, as not being in any

proper sense property. We held, however, that it was property, and that, in case of the insolvency of a licensed producer of sugar, upon his being adjudged an insolvent his claim for bounty would pass by the insolvency proceeding to his syndic. Calder v. Henderson, 2 U. S. App. 627, 4 C. C. A. 584, 54 Fed. 802. In another case, where a lien upon a right to collect the bounty was claimed by reason of a previous contract for advances and hypothecation of the crop, and an express pledge of the bounty as security for the advances, we held that the party making the advances was entitled to retain the draft for the bounty which by direction of the parties had been sent to him by the department, and the licensed producer, or his syndic, required to indorse the check so that the holder or pledgee and mortgagee could and did collect the same. Barrow v. Milliken, 20 C. C. A. 559, 74 Fed. 612. In the third case that came before us, where a lien upon the bounty after it had been paid by the government and was in the hands of one of the parties to the suit was claimed by pledgee and mortgagee under a contract made previous to the production of the sugar, we certified certain questions to the supreme court, and asked their instructions in reference thereto; and their decision, rendered May 10, 1897, is to the effect that it was within the power of the contracting parties to create an equitable lien upon the bounty collected; that "the bounty was given, by the terms of the act of 1890, not to the manufacturer of sugar manufactured within the United States, but to the producer of such sugar from beets, sorghum, and sugar cane grown within the United States. In this way the law, in conferring a bounty, created a link between the manufacturer of the sugar and the grower of the beets, sorghum, or cane from which it was manufactured. And this connection between the manufacturer and the grower being created by the act of congress in conferring a bounty only for sugar manufactured from cane grown within the United States, the relation between the grower and the manufacturer was one arising from the laws of the United States. * * * The parties to the contract had in view, in making it, the necessary relation between them accorded by the act of congress; for the contract stipulated that the parties of the first part should keep all such books and records as are required by the United States government in relation to the bounty, and to furnish to the party of the second part all the details which may be necessary to enable them to effectuate their bounty rights. The right to collect the bounty having arisen from a law of the United States, the provisions of that law create the necessary relation between the grower and the manufacturer, making them, in effect, joint producers of the sugar. The right to the equitable lien stipulated by the contract was not controlled by the provisions of the local law of Louisiana." Refining Co. v. Payne, 17 Sup. Ct. 754. And the questions were answered to the effect that the parties had an equitable lien on the bounty money collected, and that the lien could be enforced in the equity proceeding in the circuit court. It seems clear to us, from the allegations of the bills in these cases, and the conceded facts, that Walter J. Suthon is the equitable owner of the bounty in question; that his relations with the owners of

the plantations and the factories thereon, established by contract made in good faith, and not opposed to the policy of the bounty acts, but with the evident and efficient purpose of promoting that policy, fix his character as one of the joint producers of the sugar. It is clear that the term "producer" is not used in any technical sense in these statutes, and the elaborate regulations providing for notice in the application for license seek only to definitely point out who is the beneficial owner of the claim to the government's bounty for the production of the sugar. The act of March 2, 1895, reposes for its validity, in part, at least, on the equities arising out of the situation of the parties, precipitated by the repeal of the act of October 1, 1890 (U. S. v. Realty Co., 163 U. S. 427, 16 Sup. Ct. 1120); and all of the equitable considerations that induced, constrained, and authorized congress to make the appropriation made by that act point to the plaintiff in these suits as the producer, within the purview of those acts, of the sugar that was in fact produced on the plantations in question. We conclude, therefore, that the circuit court erred in sustaining the peremptory plea to the plaintiff's cause of action, and in dismissing the bills in these cases, for which error the decrees must be reversed. and the causes remanded to that court, with directions to overrule the pleas, and thereafter to proceed in accordance with law.